[No. 15090-5-II.  Division Two.  December 8, 1993.]

THE STATE OF WASHINGTON, *Appellant,* v. BILLY DAWKINS, *Respondent.*

*David Bruneau, Prosecuting Attorney,* and *Deborah S. Kelly, Deputy,* for appellant.

*David Allen, Todd Maybrown, Richard Hansen,* and *Allen & Hansen, P.S.,* for respondent.

ALEXANDER, C.J. — After a jury convicted Billy Dawkins of one count of second degree child molestation, the trial court found that Dawkins's trial counsel had rendered ineffective representation and, consequently, it ordered a new trial. The State appeals. We affirm.

On July 30, 1990, Dawkins was charged with two counts of second degree child molestation. RCW 9A.44.086.[1] The charges arose out of an incident involving two 13-year-old females, K.N. and R.B.

Before trial, Dawkins retained the services of an attorney. The attorney soon discovered that the State was aware of allegations of prior uncharged incidents of sexual contact between Dawkins and R.B. The attorney did not, however, move before trial to prohibit introduction of evidence about these incidents.

At trial, the bulk of the State's evidence consisted of the testimony of K.N. and R.B. According to K.N., she and R.B. were baby-sitting the Dawkinses children at the Dawkinses residence on New Year's Eve 1988. When the Dawkinses returned home later that evening, K.N. and R.B. went to sleep on the living room floor. K.N. testified that she awoke early the next morning, between 5:30 and 6 a.m. on January 1, 1989, because some individual had his or her "hand down my pants". When K.N. rolled over, the individual removed his or her hand and left.

K.N. identified Dawkins as the individual who touched her. Although she admitted that she had her eyes closed during the incident and had not actually seen the individual who had touched her, she believed it was Dawkins because

---

[1] "(1) A person is guilty of child molestation in the second degree when the person has sexual contact with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim."

she thought he was the only person awake that early in the morning, and she heard his logging truck leave the residence soon after the incident.

R.B. similarly testified that Dawkins also improperly touched her that morning. According to R.B., this was not the first such incident. R.B. testified, without objection from Dawkins's trial counsel, about three prior incidents at Dawkins's residence during which Dawkins allegedly touched her. According to R.B., in each of these three prior incidents, Dawkins entered the room in which R.B. was sleeping and touched one of her breasts. Though R.B. had her eyes closed during the second and third of these incidents, she believed it was Dawkins who had touched her because she heard his logging truck leave the residence soon after the incident.

After relating these prior, uncharged incidents, R.B. testified about the incident charged. According to R.B., she was sleeping on the living room floor next to K.N. In the morning, she heard Dawkins get up, go to the kitchen and make coffee. She then heard him go outside and start his truck. R.B. testified that Dawkins then reentered the residence, entered the living room, and walked over to where K.N. was sleeping. R.B. said that he then "came over to my side and he bent down and he took one of his hands and was feeling my breasts and then he went underneath my sweats in my underwear and . . . [t]ouched my [crotch]." On cross examination, R.B. admitted she had her eyes closed and did not actually see the individual who touched her.

Dawkins took the stand in his own defense. He denied the allegations of both children. He claimed that he had not gotten up early in the morning, had not started his logging truck, had not entered the living room, and had not touched either K.N. or R.B. Dawkins also presented witnesses who contradicted K.N.'s and R.B.'s versions of the events.[2]

---

[2]One such witness was M.E. who testified that she too was sleeping on the living room floor on the morning in question, but had not seen or heard Dawkins start his truck or enter the living room.

The case was submitted to a jury which acquitted Dawkins on the count involving K.N. The jury convicted Dawkins on the count involving R.B.

At the time set for sentencing, the trial judge called both counsel into chambers and on his own raised the issue of "incompetence of [defense] counsel". The trial court explained that it was concerned that R.B. had testified, without objection, about the prior uncharged incidents of touching. Dawkins's counsel responded that he had researched the issue, and after discovering the so-called "lustful disposition" exception to the general rule that prior bad acts of a defendant are inadmissible, determined that the evidence probably would not have been excluded. He further stated that after discussing the issue with Dawkins, he chose not to challenge the admissibility of the evidence by a motion in limine. The trial court continued the sentencing hearing in order to give Dawkins time to obtain new counsel to prepare a motion for new trial.

Dawkins thereafter retained new counsel who filed a motion for new trial, alleging ineffective assistance of trial counsel and erroneous admission of the "lustful disposition" evidence. The trial court granted the motion, concluding that had counsel raised the objection, the trial court would have excluded the evidence because the prejudicial effect of it outweighed its probative value; had the evidence been excluded, "the result of the proceedings would probably have been different"; and that trial counsel rendered ineffective assistance by failing to object to the "lustful disposition" testimony.

The State appeals. It argues that the trial court abused its discretion in finding that defense counsel rendered ineffective assistance, and thus abused its discretion in granting a new trial.

■ Pursuant to CrR 7.6(a)(8), a trial court may grant a new trial when "substantial justice has not been done". The decision to grant or deny a new trial will not be disturbed unless it constitutes a manifest abuse of discretion. *State v. Jackman*, 113 Wn.2d 772, 777, 783 P.2d 580 (1989); *State v.*

*Crowell*, 92 Wn.2d 143, 145, 594 P.2d 905 (1979); *State v. Havens*, 70 Wn. App. 251, 255, 852 P.2d 1120 (1993). A much stronger showing of abuse of discretion is required to set aside an order granting a new trial than one denying it. *Crowell*, 92 Wn.2d at 145-46. An abuse of discretion exists unless it can realistically be said that "no reasonable person would take the position adopted by the trial court." *State v. Clapp*, 67 Wn. App. 263, 272, 834 P.2d 1101 (1992) (citing *State v. Huelett*, 92 Wn.2d 967, 603 P.2d 1258 (1979)), *review denied*, 121 Wn.2d 1020 (1993). A number of cases indicate, and the State conceded at oral argument, that the abuse of discretion standard applies when reviewing the granting of a new trial based upon ineffective assistance of counsel. *State v. Blight*, 150 Wash. 475, 478, 273 P. 751 (1929); *State v. Arner*, 538 So. 2d 528 (Fla. Dist. Ct. App. 1989); *People v. Gallagher*, 116 Mich. App. 283, 323 N.W.2d 366, *appeal denied*, 414 Mich. App. 936 (1982), *cert. denied*, 459 U.S. 1203 (1983); *State v. Thomas*, 768 S.W.2d 335 (Tex. Ct. App. 1989).

■ Here, the trial court found that "substantial justice had not been done" because Dawkins' trial counsel rendered ineffective assistance. *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984) provides the test to determine whether a defendant has been denied his Sixth Amendment right to effective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687; *State v. Bowerman*, 115 Wn.2d 794, 808, 802 P.2d 116 (1990); *State v. Thomas*, 109 Wn.2d 222, 225, 743 P.2d 816 (1987). We thus review both the deficient performance and prejudice prongs of the *Strickland* test.

## A
### DEFICIENT PERFORMANCE

As to the deficient performance, the trial court found:

> 1.3 The Defendant's counsel provided ineffective assistance by not objecting to the introduction of evidence of allegations of other incidents, not charged, involving the alleged victim, R.B.
> 1.4 Defense counsel's performance fell below an objective standard of reasonableness.

In order to find that counsel rendered deficient performance in failing to object to the "lustful disposition" testimony, the trial court must have found the evidence would have been inadmissible. Generally, ER 404(a) provides that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion . . .". In the criminal context, ER 404(a) bars evidence of defendant's bad character to show that the defendant was likely to have committed the present offense because he committed the prior bad act. *See* 5 K. Tegland, Wash. Prac., *Evidence* § 109 (3d ed. 1989).

ER 404(b), however, provides that evidence of uncharged crimes, wrongs or acts may be admissible under certain circumstances. It states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ A court applying ER 404(b) first must determine whether the offered evidence is relevant, *i.e.*, whether the evidence is offered to prove a fact of consequence to the action, and if so, whether the evidence tends to make such fact more or less probable. ER 401; *State v. Dennison*, 115 Wn.2d 609, 628, 801 P.2d 193 (1990); *State v. Smith*, 106 Wn.2d 772, 776, 725 P.2d 951 (1986) (quoting *State v. Saltarelli*, 98 Wn.2d 358, 362-63, 655 P.2d 697 (1982)).

■ If relevant, the trial court must then, on the record, balance the evidence's probative value against its prejudicial effect. ER 403; *Smith*, 106 Wn.2d at 776 (quoting *Saltarelli*,

98 Wn.2d at 363); *State v. Jackson*, 102 Wn.2d 689, 693, 689 P.2d 76 (1984). "If such evidence is admitted, the court must explain its purpose to the jury. These steps are particularly important in sex cases", *State v. Bacotgarcia*, 59 Wn. App. 815, 819, 801 P.2d 993 (1990), *review denied*, 116 Wn.2d 1020 (1991), "where the potential for prejudice is at its highest". *State v. Coe*, 101 Wn.2d 772, 781, 684 P.2d 668 (1984). If the trial court properly analyzes the ER 404(b) issue, its ruling is reviewed for an abuse of discretion. *Dennison*, 115 Wn.2d at 628; *Maehren v. Seattle*, 92 Wn.2d 480, 488, 599 P.2d 1255 (1979), *cert. denied*, 452 U.S. 938 (1981).

As the law in Washington now stands, R.B.'s testimony about prior, uncharged touching incidents was relevant as to count 2 to demonstrate Dawkins' "lustful disposition" toward her. Establishing that Dawkins had sexual contact with R.B. in the past tends to make the fact that he had such sexual contact with her on this occasion more probable. *State v. Ray*, 116 Wn.2d 531, 547, 806 P.2d 1220 (1991); *State v. Ferguson*, 100 Wn.2d 131, 133-34, 667 P.2d 68 (1983).

Though relevant, the trial court concluded that it would have ruled the testimony inadmissible had it been called upon to exercise its discretion to weigh the evidence's probative value against its prejudicial effect. As to probative value, the trial court found: "The probative value of this evidence was questionable or slight because there was not much of an issue as to the identity of the Defendant." Obviously, the probative value of the evidence was to show that because Dawkins allegedly improperly touched R.B. in the past, it was more likely that he improperly touched her on this occasion.

As to the evidence's prejudicial effect, the trial court found the prejudice Dawkins suffered to his credibility "was very great". We agree. The real question at this trial was one of reality, not of identity; *i.e.*, not who improperly touched K.N. and R.B., but whether any improper touching ever took place. Because there were no eyewitnesses to the touching, nor any physical evidence, the question of guilt thus necessarily turned on the relative credibility of the accused and the accuser. Here,

the accuser's testimony concerning Dawkins cast him as "a person of abnormal bent, driven by biological inclination". *Coe*, 101 Wn.2d at 781 (quoting Slough & Knightly, *Other Vices, Other Crimes*, 41 Iowa L. Rev. 325, 333-34 (1955-1956)). As such, it was relatively easy for the jury to believe Dawkins must be guilty because he could not help himself, and thus was more likely to be less credible in his recitation of events that morning than R.B. was.

■ Though defense counsel was correct that "lustful disposition" evidence is generally relevant under ER 404(b), he failed to consider the axiomatic, fundamental principle that evidentiary rulings are assigned to the discretion of the trial court. Without raising the objection, counsel was in no position to hypothesize that the court would not have excluded the evidence. As is apparent, the converse was true. In short, we conclude that the trial court would not have abused its discretion in concluding that R.B.'s testimony about prior, uncharged touching incidents was inadmissible, had the objection been made. Therefore, it did not abuse its discretion in holding that the failure of defense counsel to object to the "lustful disposition" constituted deficient performance by trial counsel.[3]

## B
### PREJUDICE

As to the prejudice that resulted from defense counsel's deficient performance, the trial court concluded:

---

[3]Likewise, the trial court did not abuse its discretion in determining that counsel's failure to object to the "lustful disposition" testimony was not a matter of trial tactics. Finding of fact 1.5. Generally, when trial counsel's actions involve matters of trial tactics, appellate courts hesitate to find ineffective assistance of counsel, *State v. Jones*, 33 Wn. App. 865, 872, 658 P.2d 1262, *review denied*, 99 Wn.2d 1013 (1983), and will indulge in the strong presumption that counsel's performance was reasonable. *State v. Bowerman*, 115 Wn.2d 794, 808, 802 P.2d 116 (1990). However, "in egregious circumstances, on testimony central to the State's case, . . . the failure to object [will] constitute incompetence of counsel justifying reversal." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (citing *Strickland*; *State v. Ermert*, 94 Wn.2d 839, 621 P.2d 121 (1980)), *review denied*, 113 Wn.2d 1002 (1989); *see State v. Leavitt*, 111 Wn.2d 66, 72, 758 P.2d 982 (1988) ("counsel was not merely employing trial strategy by failing to timely object to the failure to hold [a reliability] hearing.").

1.8 The Court believes that given the jury's different verdicts with respect to essentially identical victims, there is a strong probability that the jury used the evidence with respect to prior sexual contact with R.B. to convict the Defendant and that without that evidence there would have been a different result.

.    .    .    .

1.[10] The deficient performance of defense attorney prejudiced the Defendant and but for his unprofessional errors the result of the proceedings would probably have been different.

We agree with the trial court that the prejudice is self-evident. Significantly, K.N. testified to the events that occurred on the morning of January 1, 1989, and the jury acquitted Dawkins on the count involving K.N. Similarly, R.B. testified about the events that occurred on the morning of January 1, 1989. Additionally, however, she testified about three other touching incidents. Indeed, the majority of her testimony related to the circumstances surrounding these uncharged incidents. The jury convicted Dawkins on the count involving R.B.

Having found deficient performance and resulting prejudice, the trial court did not err in concluding that defense counsel rendered ineffective representation by failing to object to R.B.'s testimony about prior, uncharged touching incidents. Consequently, the trial court did not abuse its extensive discretion in ordering a new trial.

Affirm.

MORGAN and HOUGHTON, JJ., concur.