IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32096-1-III |
| | ) | |
| Respondent, | ) | |
| v. | ) | |
| | ) | |
| RICHARD MICHAEL PAYNE, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |

BROWN, J. — Richard Payne appeals his conviction for two counts of first degree child molestation and one count of felony indecent exposure. He contends the trial court erred by (1) admitting his 2001 conviction for attempted first degree child molestation under ER 404(b); (2) rejecting his offer to stipulate to the existence of the 2001 conviction; (3) denying him public funds to pay for defense counsel's out-of-state travel costs; (4) violating the appearance of fairness doctrine; (5) violating his right to confront his accuser; (6) denying his *Knapstad*[1] motion for one molestation count; (7) denying his motion to dismiss for governmental misconduct; (8) violating his right to be present at a show cause concerning his counsel's contempt; (9) refusing to give a missing witness jury instruction; and (10) admitting his statements. We reject Mr. Payne's contentions and thus do not reach his cumulative error contention. We find no

---

[1] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

merit in Mr. Payne's pro se statement of additional grounds for review (SAG), including his lifetime sentencing and evidence sufficiency concerns. Accordingly, we affirm.

FACTS

Around 8:00 p.m. on June 21, 2012, officers responded to a call at Northtown Mall in Spokane regarding a male who had exposed himself and touched A.R.H., a five-year-old girl. Officers were told the incident occurred at Bumpers arcade. Bumpers' video surveillance captured the incident on camera. A Bumpers employee identified Mr. Payne as the male in the surveillance video.

Approximately two hours earlier that evening, A.R.H., accompanied by her 19-year-old brother and his girlfriend, B.C., and B.C.'s 11-year-old sister K.C., went to Bumpers while A.R.H.'s mom, Heather Holland, and K.C.'s grandmother went shopping. A.R.H. and K.C. left their older siblings to play a game. According to K.C.'s testimony at trial, Mr. Payne came up to the girls and said he was going to watch them play. K.C., believing this behavior was "kind of stalkerish," told A.R.H. they should "get away." 5 Report of Proceedings (5 RP) at 838. The girls went to a skateboarding game; K.C. was on the game while A.R.H. stood next to her. K.C. saw Mr. Payne standing behind A.R.H., rubbing A.R.H.'s leg, pulling up her skirt, and touching her buttocks while his penis was out. K.C. was uncomfortable; she took A.R.H. and walked away. K.C. testified while Mr. Payne touched A.R.H., A.R.H. "[got] really pale like she was freaking out" and was speechless. 5 RP at 841. K.C. and A.R.H. found B.C. and told her what happened. A.R.H.'s brother noted A.R.H. was "blank" and K.C. was shocked and

2

scared. B.C. noted K.C. was crying, shaking, and pale. A.R.H.'s brother failed to find Mr. Payne before reporting the incident to mall security.

Ms. Holland was notified of the incident. When she got to Bumpers, she noticed K.C. was "stressed and not herself." 5 RP at 708. Ms. Holland watched the surveillance video. When she first watched the video, she thought she saw Mr. Payne pull his penis out of his pants; this caused her to scream and cry. Upon reviewing the video, she said she did not see Mr. Payne pull his penis out but he did fondle himself. She maintained Mr. Payne had his hand on A.R.H.'s backside. A.R.H.'s brother, after watching the video, testified he saw Mr. Payne pull his penis out of his pants. K.C. also watched the video in the presence of Ms. Holland, A.R.H.'s brother, B.C., and her grandmother; she noted everybody was "disgusted and crying." 5 RP at 849. She stated she did not see Mr. Payne's penis on the video because he was behind a big pillar. Ms. Holland, A.R.H.'s brother, B.C., and K.C. testified at trial.

Detective Jerry Hensley investigated the case. After identifying the man in the surveillance video as Mr. Payne, he and Detective Paul Lebsock went to Mr. Payne's address. The detectives were dressed in plain clothes, but their guns were visible. Upon arrival, Detective Hensley walked directly to the front door and rang the doorbell; there was no response. Detective Lebsock, thinking somebody might be working in the backyard given the nice weather, went to the driveway and noted the six foot vinyl fence surrounding the backyard. He could see over the fence from the driveway and saw a man; Detective Lebsock walked along the side of the fence, verbally identified himself,

3

and asked the man to come talk to them. Mr. Payne readily came over, exited the gate, and talked with the detectives while standing in his driveway.

After identifying himself, Detective Hensley read Mr. Payne his constitutional rights; Mr. Payne waived his rights and agreed to talk. Mr. Payne was calm, cooperative, did not appear to be under the influence of anything, and gave appropriate and responsive answers. Payne admitted to being at the mall on the day in question. After being told there was a video of the incident, Mr. Payne repeatedly said, "'I should not have been there.'" 5 RP at 763. After being advised witnesses said he removed his penis from his shorts, Mr. Payne admitted to touching a girl on the thigh and buttocks while his penis was out. He claimed it was just a random act.

While talking with the detectives, Mr. Payne's girlfriend arrived. The detectives introduced themselves and told her she was welcome to stay. Mr. Payne then looked at her and said, "'I touched a girl.'" 5 RP at 767. In response to a direct question, Mr. Payne admitted he did this for sexual gratification. In the CrR 3.5 hearing, Mr. Payne argued these statements were the product of coercion and were obtained via an illegal search and seizure. The trial court concluded Mr. Payne's statements to the detectives were freely and voluntarily made, legally obtained, and could be introduced at trial. At trial, Mr. Payne denied touching anyone or exposing his penis.

There were numerous other pre-trial proceedings. The trial court admitted evidence of Mr. Payne's 2001 attempted first degree child molestation conviction as a charged element elevating count III, indecent exposure, to a felony. The court admitted

4

the prior conviction under ER 404(b) to show proof of a common scheme or plan, motive or intent, and to refute a claim of accident or mistake. At trial, the victim of the 2001 conviction and her mother testified. Defense counsel was found in contempt of court before trial concerning his failure to appear at a hearing, a subject of a separate appeal; the show cause hearing was held without Mr. Payne's presence.

Mr. Payne was charged and convicted of two counts of first degree child molestation and one count of felony indecent exposure. He was sentenced as a persistent sex offender to life in prison without the possibility of release. He appealed.

ANALYSIS

A. ER 404(b) Ruling

The issue is whether the trial court erred by admitting Mr. Payne's 2001 attempted first degree child molestation conviction under ER 404(b) to show common scheme or plan, intent, and/or lack of accident. Mr. Payne contends admission of his prior conviction purely showed propensity and was more prejudicial than probative. He challenges the trial court's ER 404(b) findings of fact and conclusions of law.

We review a trial court's evidentiary rulings for an abuse of discretion. *State v. Slocum*, 183 Wn. App. 438, 449, 333 P.3d 541 (2014). "A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons, i.e., if the court relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law." *Id.* (quoting *State v. Hudson*, 150 Wn. App.

5

646, 652, 208 P.3d 1236 (2009)). We may affirm the trial court on any correct ground. *State v. Gresham*, 173 Wn.2d 405, 419, 269 P.3d 207 (2012).

ER 404(b) prohibits the use of "[e]vidence of other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith." However, that "same evidence may be admissible for other purposes, depending on its relevance and the balancing of the probative value and danger of unfair prejudice." *Slocum*, 183 Wn. App. at 448. ER 404(b) contains a nonexclusive list of other purposes for which the evidence may be admitted, including to show a plan, intent, or absence of accident. *Id.*

The ER 404(b) evidence proponent must demonstrate a proper purpose for admission of a person's prior bad acts. *Id.* Before a trial court can admit evidence of bad acts, it must "(1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect." *Gresham*, 173 Wn.2d at 421. Doubts as to the admissibility of prior bad acts are resolved in the defendant's favor. *State v. Trickler*, 106 Wn. App. 727, 733, 25 P.3d 445 (2001).

The third and fourth steps are at issue here. Mr. Payne disputes any crime occurred; thus, the existence of a design to inappropriately touch children evidenced by a pattern of past behavior is probative. *See State v. DeVincentis*, 150 Wn.2d 11, 17-18, 74 P.3d 119 (2003); *Slocum*, 183 Wn. App. at 456 (stating "evidence that a charged

6

crime was carried out in a manner devised by the defendant and used by him more than once has a distinct and additional probative value that justifies its admission"). Provided Mr. Payne's prior conviction is sufficient to show a common scheme or plan and is more probative than prejudicial, it may be admitted.

Evidence may be admissible to show a common scheme or plan where "an individual devises a plan and uses it repeatedly to perpetrate separate but very similar crimes." *State v. Lough*, 125 Wn.2d 847, 855, 889 P.2d 487 (1995). A common scheme or plan can be established by showing a defendant "committed markedly similar acts of misconduct against similar victims under similar circumstances." *Id.* at 852, 860 (elaborating "the evidence of prior conduct must demonstrate not merely similarity in results[ ] but such occurrence of common features that the various acts are naturally to be explained as caused by a general plan of which the charged crime and the prior misconduct are the individual manifestations"). While uniqueness between the current charged crime and the prior bad acts is not necessary to admit prior bad acts as evidence of a common scheme or plan, "'[r]andom similarities are not enough'" and "'the degree of similarity . . . must be substantial.'" *Slocum*, 183 Wn. App. at 451 (quoting *DeVincentis*, 150 Wn.2d at 18, 20).

In *DeVincentis*, the Washington Supreme Court upheld admission of evidence of a prior act of child molestation to show a common scheme or plan to commit the same. *DeVincentis*, 150 Wn.2d at 22-24. In both situations, the victims were girls between 10 and 13 years old. *Id.* at 22. The defendant used similar methods to get to know the

7

victims. *Id.* at 13, 15, 22. The defendant wore unusual underwear to get the victims used to his near-nudity. *Id.* at 22. The defendant asked both victims for massages in a secluded spot of his home and had them both perform the same sex act. *Id.*; *see also Gresham*, 173 Wn.2d at 422-23 (upholding admission of prior acts of child molestation to show a common scheme or plan despite there being some differences in the crimes where defendant took a trip with young girls and fondled the girls at night while the other adults slept); *State v. Sexsmith*, 138 Wn. App. 497, 505, 157 P.3d 901 (2007) (upholding admission of evidence of prior acts of child molestation to show common scheme or plan where defendant was in a position of authority over both victims, victims were the same age, defendant isolated victims when he molested them and forced them to take nude photographs, watch pornography, and fondle defendant).

Mr. Payne's 2001 conviction occurred at a dollar store. The victim, a nine-year-old girl, was shopping with her mom. Mr. Payne approached the victim when she left her mom to look at something located a few aisles over. Mr. Payne put one hand on the victim's crotch and another on her butt before lifting her off the ground.

In the ER 404(b) conclusions of law, the trial court articulated several similarities between the charged crime and the prior conviction that showed a common scheme or plan. The court noted "the commercial setting of the acts, the sexual touching of a minor female, targeting of an unknown victim, and targeting of a minor child while the child was separated from adult supervision." Clerk's Papers (CP) at 630. In its oral

8

ruling, the court discussed the fact the touching occurred on the outside of the victims' clothing and the common intent of sexual gratification.

Despite these similarities, Mr. Payne argues (1) evidence of a common scheme or plan requires multiple prior bad acts, (2) his prior conviction was too remote in time to be relevant, and (3) differences negate the similarities. As seen in *Sexsmith* and *DeVincentis*, it is not necessary for there to be numerous prior bad acts in order to show a common scheme or plan. And as stated in *Sexsmith*, the lapse of time between the charged crime and the prior conviction is not a determinative factor. *Sexsmith*, 138 Wn. App. at 505. Lastly, the *Gresham* court admitted evidence of a prior bad act despite there being differences. Like in *Gresham*, the differences Mr. Payne points to (e.g., the charged crime occurred in an arcade with video surveillance rather than in a dollar store without surveillance) "are not so great as to dissuade a reasonable mind from finding that the instances are naturally to be explained as 'individual manifestations' of the same plan." *Gresham*, 173 Wn.2d at 423. The trial court did not abuse its discretion in finding Mr. Payne's 2001 conviction was relevant to the overall question of his guilt.

In balancing the probative value versus the prejudicial effect of prior bad acts evidence, courts generally find the "probative value is substantial in cases where there is very little proof that sexual abuse has occurred, particularly where the only other evidence is the testimony of the child victim." *Sexsmith*, 138 Wn. App. at 506 (upholding trial court's admission of evidence of past sexual abuse by defendant because defendant's general denial of the charges put every element of the offense at

9

issue and credibility was thus an important factor). While a trial court must articulate its balancing process on the record, failure to do so may be harmless if the record permits appellate review. *State v. Acosta*, 123 Wn. App. 424, 433, 98 P.3d 503 (2004).

Mr. Payne argues the trial court summarily and incorrectly concluded the probative value of his 2001 conviction outweighed the prejudicial effect. He asserts the jury's concerns about the 2001 conviction's impact necessarily mean it convicted him because admission of the 2001 conviction solely showed propensity. But in its oral ER 404(b) ruling, the trial court reserved ruling on the fourth step, whether the probative value outweighs the prejudicial effect, until it heard all other relevant evidence. The court heard argument by both sides on this issue and waited to make its ruling until it heard testimony at the CrR 3.5 hearing and Mr. Payne's motion to dismiss. The court ultimately ruled the probative value did outweigh the prejudicial effect and noted in its written conclusions of law the prejudicial impact of admitting the 2001 conviction was mitigated because it had to be admitted to prove an element of felony indecent exposure. The court discussed the importance and meaning of a limiting instruction and gave such an instruction to the jury. The court and the parties chose jurors who said they would not be improperly influenced by the 2001 conviction. The record does not support Mr. Payne's arguments that the jury used the ER 404(b) evidence for an improper purpose. *See Lough*, 125 Wn.2d at 864 (a jury is presumed to follow the trial court's instructions).[2] Despite the trial court not going into depth on the record about its

---

[2] Because we may affirm the court's ruling on any correct ground, admission of Mr. Payne's prior conviction for intent/motive and lack of accident or mistake need not

balancing process, the record as a whole permits meaningful appellate review. The trial court did not abuse its discretion in deciding the probative value of Mr. Payne's 2001 conviction outweighed the prejudicial effect.

Mr. Payne objects to the trial court's findings of facts and conclusions of law on the ER 404(b) motion. He complains they do not include his denial of all allegations against him. No need exists to include such a finding. Mr. Payne's general denial of the allegations made his prior conviction more probative. *See Sexsmith*, 138 Wn. App. at 506. It is not our function to reweigh evidence, and we are not in a position to find persuasive that which a fact-finder found unpersuasive. *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009). Because the trial court did not abuse its discretion in admitting his 2001 conviction, the conclusions of law are proper. *See DeVincentis*, 150 Wn.2d at 17 (appellate courts review the court's interpretation of ER 404(b) de novo).

### B. Stipulation to Prior Sex Offense

The issue is whether the trial court erred by denying Mr. Payne's motion to stipulate to the existence of a prior sexual offense as an essential element of felony

---

be fully analyzed. For ER 404(b) purposes, intent/motive can be introduced even if it is not an essential element of the crime charged provided the prior bad act is reasonably related to the crime charged and does not merely show propensity. *State v. Fuller*, 169 Wn. App. 797, 829, 282 P.3d 126 (2012). RCW 9A.44.083(1) uses the term "sexual contact"; "sexual gratification" clarifies what "sexual contact" means. *Lorenz*, 152 Wn.2d at 34-35. Use of the 2001 conviction to show touching A.R.H. was for Mr. Payne's "sexual gratification" goes to both his intent and lack of accident or mistake. RCW 9A.88.010(1) provides a person is guilty of indecent exposure if his conduct "is likely to cause reasonable affront or alarm." Use of the 2001 conviction where Mr.

indecent exposure in order to prevent the jury from being informed of the nature of the prior conviction. Mr. Payne contends trial courts must accept stipulations when offered and his trial should have been bifurcated.

"Courts have long held that when a prior conviction is an element of the crime charged, it is not error to allow the jury to hear evidence on that issue." *State v. Roswell*, 165 Wn.2d 186, 197, 196 P.3d 705 (2008). However, the United States Supreme Court held a defendant may stipulate to the fact he has a prior conviction in order to prevent the prosecution from introducing into evidence details of that prior conviction. *Old Chief v. United States*, 519 U.S. 172, 191, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997). Thus, a trial court that refuses to accept a defendant's offer to stipulate and instead admits into evidence details about a defendant's prior convictions abuses its discretion as this raises the risk of the prior conviction being improperly considered. *Id.* at 191. But the *Old Chief* court limited application of its holding to those situations when the sole purpose of admitting the prior conviction is to prove the element of prior conviction; where an independent purpose exists for the admission of the prior conviction, a trial court does not have to accept a defendant's stipulation. *Id.* at 190-91.

The trial court did accept Mr. Payne's stipulation stating he was convicted in 2001 of attempted first degree child molestation. Had the 2001 conviction been used solely to prove an element of felony indecent exposure, then the trial court would have erred by denying Mr. Payne's offer to stipulate without including the nature of the

---

Payne engaged in essentially the same conduct for the same purpose goes to show he knew such conduct was likely to cause reasonable alarm.

offense. But Mr. Payne's 2001 conviction was properly admitted under ER 404(b) to show, at the minimum, a common scheme or plan. Because an independent purpose existed for the admission of the prior conviction, the trial court did not err by denying Mr. Payne's motion.

As for Mr. Payne's argument he was entitled to a bifurcated trial, he fails to provide any legal authority to support his assertion. He argues *State v. Oster*, 147 Wn.2d 141, 52 P.3d 26 (2002), stands for his proposition. However, the trial court in *Oster* bifurcated the "'to convict'" jury instructions with regard to prior offenses; it did not, as Mr. Payne argues, provide authority for a bifurcated trial. *Id.* at 143; *see also Roswell*, 165 Wn.2d at 196-99 (holding a trial court does not abuse its discretion by refusing to grant a defendant's motion to bifurcate).

### C. Travel Expenses

The issue is whether the trial court erred by denying Mr. Payne public funds to pay defense counsel's travel costs to conduct in-person interviews of out-of-state witnesses. Mr. Payne contends his due process rights, his right to effective assistance of counsel, and his right to compulsory process were violated as in-person interviews were necessary for his defense and he was indigent.

"A fair trial contemplates the defendant will not be prejudiced by the denial to him of his right to counsel and compulsory attendance of witnesses." *State v. Burri*, 87 Wn.2d 175, 180, 550 P.2d 507 (1976). If the actions of the prosecution deny defense counsel the opportunity to prepare for trial, a defendant is denied his federal and

13

Washington constitutional right to counsel. *Id.* (stating preparation includes "the right to make a full investigation of the facts and law applicable to the case").

A "defendant's right to compulsory process includes the right to interview a witness in advance of trial." *Id.* at 181. Within the right to compulsory process, defense counsel has the right to interview and examine witnesses who might be able to assist in uncovering the truth about the charged crime. *Id.* A violation of a defendant's constitutional right to counsel and compulsory process is presumed prejudicial. *Id.*

CrR 3.1(f) provides for authorization of funds for services other than counsel:

> (1) A lawyer for a defendant who is financially unable to obtain investigative, expert, or other services necessary to an adequate defense in the case may request them by a motion to the court.
> (2) Upon finding the services are necessary and that the defendant is financially unable to obtain them, the court . . . shall authorize the services.

CrR3.1(f) "incorporates constitutional requirements by recognizing that funds must be provided where *necessary* to an adequate defense." *State v. Kelly*, 102 Wn.2d 188, 200, 685 P.2d 564 (1984) (finding trial court's refusal to authorize funds for travel expenses of a physician-witness proper because other evidence substantiated the injuries and the physician's relevant testimony was not necessary); *see also State v. Bowman*, 57 Wn.2d 266, 272-73, 356 P.2d 999 (1960) (finding trial court did not abuse its discretion in denying indigent defendant's petition for public funds to pay to interview the State's witnesses and prepare for trial).

14

Mr. Payne requested the trial court pay for his counsel's travel expenses to conduct in-person interviews of out-of-state witnesses numerous times. The court refused each request. While Mr. Payne correctly argues he has the right to interview witnesses before trial, the trial court did not abuse its discretion in denying his requests. First, as in *Kelly*, the funds were not necessary. Mr. Payne mainly takes issue with his inability to interview K.C. and A.R.H. K.C. was amenable to doing telephone and video interviews; defense counsel failed to attend any scheduled interview with K.C., claiming the interview needed to be in-person so he could gauge whether she was being coached or was particularly suggestible. This could be seen in a video interview, and defense counsel explored both these issues during cross examination at trial. A.R.H.'s testimony, provided she could be made to testify, was not necessary as K.C. corroborated A.R.H.'s expected testimony. Second, Mr. Payne's reliance on *Burri* is misplaced as the *Burri* facts show a blatant abuse of power by the prosecutor to find evidence against the defendant using the defendant's own alibi witnesses and withholding that evidence from the defense. *Burri*, 87 Wn.2d at 176. As noted, Mr. Payne's counsel was not prevented from conducting interviews, and he did eventually interview K.C. prior to trial.

## D. Appearance of Fairness

The issue is whether the trial judge violated the appearance of fairness doctrine. Mr. Payne contends the trial judge should have recused herself because the record shows she was biased against him from the outset of his case.

15

"Due process, the appearance of fairness doctrine and Canon 3(D)(1) of the Code of Judicial Conduct [ ] also require a judge to disqualify [herself] if [she] is biased against a party or [her] impartiality may reasonably be questioned." *State v. Dominguez*, 81 Wn. App. 325, 328, 914 P.2d 141 (1996). Prejudice is not presumed, so a party claiming bias or prejudice must support the claim. *Id.* Before the doctrine will be applied, there must be evidence of a judge's actual or potential bias. *Id.* at 329; *see State v. Gamble*, 168 Wn.2d 161, 188, 225 P.3d 973 (2010) (finding comments made about the strength of the State's evidence outside the presence of the jury are not evidence of bias). If a party presents sufficient evidence of bias, "[t]he test is whether a reasonably prudent and disinterested observer would conclude [the party] obtained a fair, impartial, and neutral trial." *Dominguez*, 81 Wn. App. at 330.

Mr. Payne claims numerous instances of bias and prejudice on the trial judge's behalf. None of the instances he cites are evidence of actual or potential bias. As discussed, the judge's refusal to order in-person interviews of key witnesses was not an abuse of discretion, especially when defense counsel's deliberate failure to participate in phone interviews and video conferencing is considered. The judge's perceived bias against defense counsel during closing is meritless considering he merely experienced technical difficulties with his technology choice. The judge inquired if counsel could fix the problem if the court took a break, stating fifteen minutes had passed; counsel never asked if the jury could be excused. Mr. Payne's assertion the judge raised her voice in

16

a threatening manner is a matter outside the record and is not considered on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Regarding the judge's comment that she "tipped" defense counsel over, the judge clarified she tried to talk to counsel privately about a sensitive matter before resorting to discussing it on the record. Moreover, the judge did not personally attack counsel's wife; the judge merely stated the wife was "a major problem" because she refused to assist the court in contacting defense counsel regarding his medical issues. 5 RP at 255. Similarly, it was counsel's failure to keep the court informed and follow its orders regarding his medical issues that led to a contempt finding; it was not the fact counsel was ill. The judge did not impose sanctions and sought to maintain the impending date; the judge explicitly stated the contempt finding did not affect the trial. Mr. Payne complains the judge cancelled his counsel's prepaid vacation, but the judge attempted to work around his counsel's vacation until witness availability issues arose.

Mr. Payne's arguments of judicial prejudice are equally meritless. While the judge conducted the contempt show cause hearing without Mr. Payne's presence, that hearing, as analyzed below, was not a critical stage of Mr. Payne's case. The judge did not attempt to get Mr. Payne to fire defense counsel when observing Mr. Payne *may* have to fire counsel if counsel could not adequately represent him. As for Mr. Payne's assertion the judge forced him to choose between his right to speedy sentencing and his right to fair sentencing, the judge said she would have accommodated Mr. Payne had there been a timely objection.

17

Furthermore, the judge did not err by refusing to recuse herself in the show cause hearing. Recusals are reviewed for abuse of discretion. *State v. Leon*, 133 Wn. App. 810, 812, 138 P.3d 159 (2006). Mr. Payne argues recusal was necessary under RCW 7.21.040(2)(c) and (d), which applies to punitive sanctions. However, the court found counsel in civil contempt under RCW 7.21.010; civil contempt is associated with remedial sanctions, and defense counsel was able to purge the contempt. *See In re Dependency of A.K.*, 162 Wn.2d 632, 645-46, 174 P.3d 11 (2007) (citing *Int'l Union United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827-28, 831, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994)). Mr. Payne's argument is inapplicable.

### E. Right to Confront Accuser

The issue is whether Mr. Payne was denied his constitutional right to confront his accuser, A.R.H. Mr. Payne contends his right to confront A.R.H. and his right to compulsory process was violated when the court refused to order A.R.H. to testify.

We review a claim of denial of Sixth Amendment rights de novo. *State v. McCabe*, 161 Wn. App. 781, 786, 251 P.3d 264 (2011). The Confrontation Clause of the Sixth Amendment to the United States Constitution states "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Id.* (citation omitted). Article I, section 22 of the Washington Constitution provides "[i]n criminal prosecutions the accused shall have the right . . . to meet the

witnesses against him face to face."[3] *Id.* (citation omitted). The Sixth Amendment

"applies to 'witnesses' against the accused-in other words, those who 'bear testimony.'"

*Crawford v. Washington*, 541 U.S. 36, 51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)

(defining "testimony" as a "solemn declaration or affirmation made for the purpose of

establishing or proving some fact"). The State did not attempt to use any statements

from A.R.H. Thus, the trial court did not violate Mr. Payne's right to confront witnesses

against him.

The right to compulsory process, guaranteed by the Sixth Amendment, provides

a criminal defendant the right to compulsory process to obtain the attendance of

witnesses at his trial. *State v. Smith*, 101 Wn.2d 36, 41, 677 P.2d 100 (1984). When no

attempt is made to use the witness' testimony, a defendant may not complain of denial

of compulsory process. *State v. Summers*, 60 Wn.2d 702, 706, 375 P.2d 143 (1962). A

defendant is not entitled to a subpoena compelling a witness' attendance at trial absent

a showing of testimonial materiality. *State v. Kowalchuk*, 116 Wn. 592, 598-99, 200 P.

333 (1921); *see also State v. Roberts*, 80 Wn. App. 342, 351, 908 P.2d 892 (1996)

(materiality requires showing "the defense has a 'colorable need' for the witness")

(internal quotation omitted). Denial of compulsory process is disturbed when prejudice

is established. *State v. Derum*, 76 Wn.2d 26, 28, 454 P.2d 424 (1969).

The trial court did not order A.R.H. to testify at trial because Mr. Payne made no

showing her testimony was material. K.C.'s testimony, Mr. Payne's own admissions to

---

[3] As Mr. Payne makes no argument that article I, section 22 provides greater
protection than the federal provision in this situation, federal law is used. *See State v.*

law enforcement, and to some extent the surveillance video established the State's

case without A.R.H.'s expected testimony. The State made no attempt to use A.R.H.'s

statements during trial. Thus, even assuming any error, Mr. Payne was not prejudiced

by the trial court's denial of his right to compulsory process.

## F. Evidence Sufficiency

Mr. Payne contends the trial court erred by not dismissing count I, first degree

child molestation, pursuant to his *Knapstad* motion because insufficient evidence exists

to support his conviction. Mr. Payne argues no witness testified they were touched by

him, and he asserts the video shows nothing criminal occurred.

"Under *Knapstad*, a defendant may move to dismiss a criminal charge on the

ground that there are no disputed material facts and the undisputed facts do not

establish a prima facie case of guilt as a matter of law." *State v. Bauer*, 180 Wn.2d 929,

935, 329 P.3d 67 (2014). Because a defendant has no right to appeal a denial of a

motion to dismiss, we decline to address Mr. Payne's argument on the matter.

*Knapstad*, 107 Wn.2d at 357 (citing RAP 2.2(a)).[4]

Alternatively, Mr. Payne argues insufficient evidence supports his conviction.

Evidence is sufficient to support a guilty finding if "'after viewing the evidence in the light

most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt.'" *State v. Green*, 94 Wn.2d

---

*Smith*, 148 Wn.2d 122, 131, 59 P.3d 74 (2002).

[4] However, contrary to Mr. Payne's assertion, material facts were disputed. Both parties disputed whether the surveillance video showed touching, and both parties disputed whether Mr. Payne actually touched A.R.H.

20

216, 221, 616 P.2d 628 (1980) (emphasis omitted) (quoting *Jackson v. Virginia*, 443

U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). An evidence sufficiency

challenge "admits the truth of the State's evidence and all inferences that reasonably

can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

We defer to the jury's assessment of evidence weight and witness credibility. *State v.

Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

The State charged Mr. Payne with one count of child molestation in the first

degree, alleging he engaged in sexual contact with five-year-old A.R.H. In relevant part,

RCW 9A.44.083(1) states "[a] person is guilty of child molestation in the first degree

when the person has . . . sexual contact with another." The State's evidence showed

(1) Mr. Payne was the man on the surveillance video, (2) he was near and/or interacting

with K.C. and A.R.H., (3) Mr. Payne admitted touching A.R.H. on her thigh and buttocks

to law enforcement, and (4) K.C. saw Mr. Payne touch A.R.H. This is sufficient

evidence from which a jury could find Mr. Payne guilty of first degree child molestation

beyond a reasonable doubt.

### G. Governmental Misconduct

The issue is whether the trial court erred by not dismissing Mr. Payne's case for

governmental misconduct under CrR 8.3. He contends a new trial is warranted

because the State failed to timely disclose the video games in Bumpers had been

moved between the time of the incident and the time when Detective Hensley took

perspective photographs of the crime scene.

21

Because Mr. Payne fails to cite to any legal authority for his contention, we need not consider it. *State v. Dennison*, 115 Wn.2d 609, 629, 801 P.2d 193 (1990); RAP 10.3(a)(6). In passing, we note a trial court's power to dismiss is reviewable for abuse of discretion. *State v. Smith*, 67 Wn. App. 847, 851, 841 P.2d 65 (1992). Discretion is abused when a trial court's decision is exercised on untenable grounds or for untenable reasons or is manifestly unreasonable. *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993). CrR 8.3(b) authorizes a court to "dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial." Governmental misconduct can be simple mismanagement. *State v. Michielli*, 132 Wn.2d 229, 239, 937 P.2d 587 (1997). Prejudice under CrR 8.3(b) includes the right to a speedy trial and the right to adequately prepared counsel. *Id.* at 240. Mr. Payne cannot show prejudice. Detective Hensley stated the games were moved back into the same position they had been in when the incident occurred.

H. Right to be Present

The issue is whether Mr. Payne's right to be present was violated when the trial court conducted a contempt show cause hearing regarding his defense counsel without Mr. Payne's presence. Mr. Payne incorrectly contends this was a critical stage of these proceedings because he did not hear the court's comments regarding his counsel.

Whether a defendant's right to be present has been violated is reviewed de novo. *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011). When a defendant asserts his

22

right to be present has been violated, Washington courts look to federal law. *State v. Jones*, 175 Wn. App. 87, 105, 303 P.3d 1084 (2013). A criminal defendant has the constitutional right to be present during critical stages. *Irby*, 170 Wn.2d at 880. The right to be present is grounded in the Confrontation Clause of the Sixth Amendment and the due process clause of the Fourteenth Amendment. *Jones*, 175 Wn. App. at 105. As such, a "defendant's presence is constitutionally required 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *Id.* (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06, 54 S. Ct. 330, 78 L. Ed. 674 (1934), *overruled in part on other grounds sub nom. Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964)). The right to be present is not triggered where a defendant's "'presence would be useless, or the benefit but a shadow.'" *Id.* (quoting *Snyder*, 291 U.S. at 106-07).

Article I, section 22 of the Washington Constitution provides "[i]n criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel." Washington's right to appear and defend is broader than the federal due process right to be present. *Jones*, 175 Wn. App. at 107. Any time during a trial that a defendant's substantial rights may be affected, the Washington right is triggered. *Id.* A violation of either the federal due process right to be present or the Washington right to appear and defend is subject to harmless error analysis. *Irby*, 170 Wn.3d at 885-86. While a defendant must first raise the possibility of prejudice, the State must prove harmlessness beyond a reasonable doubt. *Jones*, 175 Wn. App. at 108.

23

Mr. Payne does not provide a reasoned analysis as to why his presence was required. He sparingly and summarily alludes to the prejudicial effect of such an action. Any error in conducting the show cause hearing without Mr. Payne's presence is harmless. Nothing in the record suggests any new facts were injected into Mr. Payne's criminal prosecution or that the hearing in any way interfered with his defense. Mr. Payne was present at the hearing before the show cause hearing where he heard why his counsel was ordered to show cause and was present in court the next business day after the show cause hearing to learn his counsel was found in contempt. With this knowledge, Mr. Payne continued with his retained defense counsel. Moreover, the trial court explicitly stated the contempt order had no bearing on any of the court's decisions, and the jury heard nothing about the contempt proceedings.

I. Missing Witness Instruction

The issue is whether the trial court erred by not giving a missing witness jury instruction. Mr. Payne contends such an instruction should have been given as A.R.H. was particularly available to the State and there was no explanation as to why A.R.H. could not testify.

Again, Mr. Payne fails to cite to any legal authority for his contention, and we need not consider it. *Dennison*, 115 Wn.2d at 629; RAP 10.3(a)(6). In passing to acknowledge Mr. Payne's concern, a trial court's refusal to give a missing witness jury instruction is reviewed for abuse of discretion. *State v. Reed*, 168 Wn. App. 553, 571, 278 P.3d 203 (2012) (abuse of discretion occurs where the decision is "manifestly

24

unreasonable or based upon untenable grounds or reasons"). We do not view a missing witness instruction necessary under this record, and thus we could not find an abuse of trial court discretion.

A missing witness jury instruction is "proper where the witness is peculiarly available to one of the parties and the circumstances at trial establish that, as a matter of reasonable probability, the party would not have knowingly failed to call the witness 'unless the witness's testimony would be damaging.'" *Id.* (quoting *State v. Davis*, 73 Wn.2d 271, 280, 438 P.2d 185 (1968), *overruled on other grounds by State v. Abdulle*, 174 Wn.2d 411, 275 P.3d 1113 (2012)) (internal citation omitted). Where a witness' testimony would be cumulative or where the witness' absence can be satisfactorily explained, a missing witness instruction is not necessary. *Id.* at 571-72.

> A witness is peculiarly available to one party if there is
>
> such a community of interest between the party and the witness, or the party [has] so superior an opportunity for knowledge of a witness, as in ordinary experience would have made it reasonably probable that the witness would have been called to testify for such party except for the fact that [her] testimony would have been damaging.

*Davis*, 73 Wn.2d at 277. A.R.H. was not peculiarly available to the State. She was a civilian witness with whom the State had no particularly special relationship. *See State v. Flora*, 160 Wn. App. 549, 556-57, 249 P.3d 188 (2011) (finding civilian witness who was in a police officer's car was not under the control of or peculiarly available to the State). Moreover, A.R.H.'s absence was satisfactorily explained. The State indicated

25

A.R.H.'s counselor and mother believed A.R.H. would be unable to testify. Finally, A.R.H.'s testimony, while relevant, was immaterial and cumulative.

### J. Admissibility of Statements

The issue is whether the trial court erred by admitting Mr. Payne's statements to law enforcement. He contends his confession was coerced in violation of his Fourth Amendment rights. He assigns error to all of the trial court's "undisputed" findings of fact following the CrR 3.5/3.6 hearing and the conclusions of law.

We review challenged CrR 3.5 findings of fact for substantial evidence. *State v. Rosas-Miranda*, 176 Wn. App. 773, 730-31, 309 P.3d 728 (2013). "'Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding.'" *State v. Solomon*, 114 Wn. App. 781, 789, 60 P.3d 1215 (2002) (quoting *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 272 (1999)).

All challenged CrR 3.5 findings of fact are supported by substantial evidence. Mr. Payne requests we substitute his version of the findings of fact for the trial court's. We defer to the fact finder's assessment of conflicting testimony, witness credibility, and evidence weight. *Carver*, 113 Wn.2d at 604. We do not reweigh evidence and substitute our view of what is persuasive in place of the fact-finder. *Quinn*, 153 Wn. App. at 717. Because the CrR 3.5 findings of fact are supported by substantial evidence, our review of the conclusions of law is de novo. *Rosas-Miranda*, 176 Wn. App. at 779. Thus, our focus is statement voluntariness and whether the statements were the result of an illegal search. *State v. Butler*, 165 Wn. App. 820, 827, 269 P.3d

26

315 (2012); *State v. Ross*, 106 Wn. App. 876, 880, 26 P.3d 298 (2001). Mr. Payne does not challenge the giving of *Miranda* rights.

In deciding whether a confession was coerced, we look to the totality of the circumstances. *State v. Broadaway*, 133 Wn.2d 118, 132, 942 P.2d 363 (1997). Circumstances to be considered include a defendant's condition and mental abilities, police conduct, and any misrepresentations made by interrogating officers. *Id.* The ultimate inquiry is whether a defendant's will was overborne. *Id.*

The record contains substantial evidence supporting the trial court's determination that Mr. Payne's statements were freely and voluntarily made. Although Mr. Payne testified he felt pressured to make the statements, the testimony of Detectives Hensley and Lebsock constitutes substantial evidence supporting the court's findings, and we defer to the trial court's credibility determinations. *See id.* at 134. The detectives did not misrepresent the evidence in this record. Detective Hensley told Mr. Payne the surveillance video showed him touching a girl; whether the video did indeed show this was a jury decision. Detective Hensley informed Mr. Payne a witness said he removed his penis from his shorts. At no point did Detective Hensley tell Mr. Payne this precise action was seen on the video.

We turn now to Mr. Payne's illegal search and seizure argument that the detectives conducted a warrantless search of his property when they looked into his fenced backyard. He mainly relies on *Florida v. Jardines*, __ U.S. __, 133 S. Ct. 1409, 1415, 185 L. Ed. 2d 495 (2013), to argue a bright line rule that law enforcement must

"approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." However, this was not the holding of the *Jardines* Court; rather, the holding pertains to using trained police dogs to investigate the home and its curtilage without a warrant. *Id.* at 1417-18.

The federal constitution and the Washington Constitution provide warrantless searches are presumed unreasonable. U.S. CONST. amend. IV; CONST. art. I, § 7. But the presence of law enforcement within the curtilage of a residence is not automatically an unconstitutional invasion of privacy. *State v. Seagull*, 95 Wn.2d 898, 902, 632 P.2d 44 (1981). Under the open view doctrine, officers who detect something using their senses "while lawfully present at the vantage point where those senses are used" do not conduct a Fourth Amendment search. *Id.* at 901.

"Police with legitimate business may enter areas of the curtilage which are impliedly open." *Id.* at 902. In entering these areas, police can keep their eyes open. *Id.* "However, a substantial and unreasonable departure from such an area, or a particularly intrusive method of viewing, will exceed the scope of the implied invitation and intrude upon a constitutionally protected expectation of privacy." *Id.* at 903. In determining whether an officer exceeded the scope of an open view, we consider several factors including whether the officer (1) spied into the house; (2) acted secretly; (3) approached the house in daylight; (4) used the normal, most direct access route to the house; (5) attempted to talk with the resident; (6) created an artificial vantage point; and (7) made the discovery accidentally. *Id.* at 905.

28

Detective Lebsock was at Mr. Payne's house on legitimate business. He did not use a particularly intrusive method of viewing. He did not spy into a residence; instead, he looked over the fence while on the driveway, an impliedly open area of the curtilage, and saw a man in the backyard. Detective Lebsock did not act secretively. He approached Mr. Payne's house on a sunny day in the middle of the afternoon. After receiving no response at the front door and noticing a car in the driveway and the nice weather, Detective Lebsock reasonably concluded Mr. Payne might be in his backyard. He did not create an artificial vantage point. Detective Lebsock looked over the fence into Mr. Payne's backyard from the driveway and the neighbors' yard. The neighbors' yard was at a higher elevation, so it is not unreasonable to believe they could see into Mr. Payne's backyard. Nothing indicates Mr. Payne was hiding or avoiding contact. Given this analysis, we conclude the trial court properly denied Mr. Payne's CrR 3.6 motion to suppress. Moreover, no physical evidence was then seized.

## K. SAG

First, Mr. Payne is concerned he received cruel and unusual punishment. He did not. Article I, section 14 of the Washington Constitution prohibits cruel punishment and is more protective than the Eighth Amendment of the federal constitution. *State v. Fain*, 94 Wn.2d 387, 392, 617 P.2d 270 (1980). *State v. Gimarelli*, 105 Wn. App. 370, 380-82, 20 P.3d 430 (2001), discusses whether a life sentence without the possibility of release for a two-time sex offender under the Persistent Offender Accountability Act is unconstitutional. There, the court, using the four *Fain* factors, held the defendant's

29

sentence was not unconstitutional: (1) attempted first degree child molestation was a most serious and violent sex offense; (2) the purposes of the two strikes law is to deter sex offenders and protect society; (3) while attempted child molestation would most likely not earn the defendant a life sentence in other jurisdictions, that factor is not dispositive; and (4) first degree child molestation and attempted first degree child molestation are serious violent sex offenses which result in a life sentence if a defendant had a prior serious violent sex offense conviction. *Id.* at 381-82. Mr. Payne's mandatory life sentence is consistent with *Fain* and *Gimarelli*.

Second, Mr. Payne is concerned about remarks in his presentence investigation (PSI) report. The trial court summarized portions of the PSI at sentencing and mentioned Mr. Payne estimated he "might have as many as 240 victims." 5 RP at 1032. The information in the PSI was gathered by reviewing prior documentation from Mr. Payne's 2001 conviction and an interview with Mr. Payne in 2013. Mr. Payne even provided detail about some of the events. Nothing in the record addresses whether these statements are false. If it is not in the record, this court does not consider the matter on a direct appeal. *McFarland*, 127 Wn.2d at 335. The appropriate means of raising such matters is through the filing of a personal restraint petition. *Id.*

Third, Mr. Payne is concerned about not being present during his defense counsel's civil contempt hearing. Appellate counsel essentially addressed this argument under Issues D (appearance of fairness) and H (right to be present). Thus, they are not further addressed here. *See* RAP 10.10(a).

30

Fourth, Mr. Payne is concerned about the trial court's denial of his post-trial motions. CrR 7.4(a)(3) allows a defendant to move to arrest judgment for "insufficiency of the proof of a material element of the crime." In ruling on a motion for arrest of judgment, the trial court does not reweigh the evidence; rather, it examines the sufficiency of the evidence. *State v. Randecker*, 79 Wn.2d 512, 517, 487 P.2d 1295 (1971). The evidence presented in a criminal trial is legally sufficient to convict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). When reviewing a trial court's decision on a motion for arrest of judgment, we engage in the same sufficiency inquiry. *Id.* at 420.

We have addressed the sufficiency of the evidence on count I, a charge of first degree child molestation. The analysis for the sufficiency of the evidence for count II, another charge of first degree child molestation, is essentially the same. The evidence, when viewed in the light most favorable to the State, shows Mr. Payne touched A.R.H. on the thigh and buttocks while his penis was removed from his pants. Mr. Payne's statements corroborate K.C.'s testimony. The surveillance video depicts Mr. Payne in the vicinity of K.C. and A.R.H. Count III, charging Mr. Payne with felony indecent exposure, is supported by sufficient evidence. RCW 9A.88.010(1) states "[a] person is guilty of indecent exposure if he . . . intentionally makes any open or obscene exposure of his . . . person . . . knowing that such conduct is likely to cause reasonable affront or

31

alarm." The State's evidence showed Mr. Payne exposed his penis while in the presence of a young child. Using the 2001 conviction for attempted first degree child molestation where Mr. Payne did essentially the same thing, the State's evidence showed Mr. Payne knew this would cause reasonable alarm. The properly accepted stipulation to the 2001 conviction raised this charge to a felony. RCW 9A.88.010(2)(c).

Next, Mr. Payne moved for a new trial under CrR 7.5(a)(1)-(8). Unless a manifest abuse of discretion, we do not disturb decisions granting or denying a new trial. *State v. Dawkins*, 71 Wn. App. 902, 906, 863 P.2d 124 (1993). "An abuse of discretion exists unless it can realistically be said that no reasonable person would take the position adopted by the trial court." *Id.* at 907 (internal quotation marks omitted). Mr. Payne's new trial motion raised the same rulings addressed here. Because we have concluded the trial court did not err in its rulings, Mr. Payne's SAG concern lacks merit.

Fifth, Mr. Payne raised evidence sufficiency concerns. His appellate counsel addressed evidence sufficiency for count I. Sufficiency of the evidence on counts II and III was discussed when analyzing Mr. Payne's SAG concern regarding the trial court's denial of his motion for arrest of judgment. Therefore, no further need exists to discuss Mr. Payne's evidence sufficiency concerns. *See* RAP 10.10(a).

Affirmed.

32

No. 32096-1-III
*State v. Payne*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Brown, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Korsmo, J.

33