# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  57298-2-II |
| Respondent, | |
| v. | |
| ANDREW WESLEY BERTRAND, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Andrew W. Bertrand appeals his convictions on two counts of first degree child molestation.  Bertrand argues the trial court erred in denying his motion for a new trial.  In that motion, Bertrand argued that he received ineffective assistance of counsel when trial counsel failed to (1) request a limiting instruction based on Washington Pattern Jury Instruction (WPIC) 5.30, (2) discover and present rebuttal witnesses, and (3) object to improper arguments during the State's closing arguments.  On appeal, Bertrand maintains that these alleged deficiencies entitle him to a new trial.

Because the trial court did not err in denying Bertrand's motion for a new trial, we affirm Bertrand's convictions.

## FACTS

In January 2021, C.A. and S.T.[1] disclosed that Bertrand had molested them.  In March, the State charged Bertrand with two counts of first degree child molestation based on his alleged abuse

---

[1]  We use initials to protect the victims' identities and privacy interests.  *See* Gen. Order 2023-2 of Div. II, *Using Victim Initials* (Wash. Ct. App.), available at:

No. 57298-2-II

of C.A. and S.T.  The charging document alleged that between January 2014 and February 2021, Bertrand molested C.A., and that between May and September 2020, Bertrand molested S.T.

Prior to trial, both parties moved to exclude any prior bad act evidence pursuant to ER 404 and the trial court granted the motions.  The case proceeded to a jury trial in December 2021.

A.    STATE'S CASE-IN-CHIEF

1.    C.A.'s Testimony

C.A. was the first witness to testify at trial.  C.A. explained that she knew Bertrand because he and C.A.'s mother were friends.  Bertrand introduced C.A. to his daughter, G.B., and the two became friends.  C.A. was also friends with S.T.

C.A. testified that Bertrand began molesting her when she was 3 or 4 years old.    C.A. explained that Bertrand would touch her when she watched movies with him at his home.  Bertrand "would start by, like, trying to scratch [her] back" before "put[ting] his hand down [her] pants or . . . up [her] shirt."  Verbatim Rep. of Proc. (VRP) (Dec. 9, 2021) at 342.  Specifically, Bertrand would touch C.A.'s "breasts or . . . back."  VRP (Dec. 9, 2021) at 342.

C.A. could not recall the first time Bertrand touched her but testified that the last touching occurred when she was around 10 years old.  C.A. recalled that she, Bertrand, and G.B. were all watching a movie; when G.B. left the room, Bertrand "started to scratch" C.A.'s back before "put[ting] his hand down [her] pants" and "[o]nto [her] butt."  VRP (Dec. 9, 2021) at 344.  C.A. estimated that Bertrand touched her "[t]en or more" times between the ages of 3 and 10.  VRP (Dec. 9, 2021) at 345.

---

https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2023-2&div=II.

C.A. first disclosed Bertrand's abuse to G.B. and S.T. during a birthday party. C.A. testified that at her last birthday party, she, S.T., and G.B. "were just talking about random stuff" when S.T. "said something about [Bertrand] touching her." VRP (Dec. 9, 2021) at 346. C.A. responded that Bertrand "had done it to [her], too." VRP (Dec. 9, 2021) at 346. After disclosing to G.B., C.A. and S.T. told C.A.'s stepmother about the abuse. C.A.'s stepmother told S.T.'s mother about the abuse and then reported the abuse to the police.

On cross-examination, defense counsel asked C.A. whether she recalled discussing Bertrand with S.T. and C.A.'s stepmother before they disclosed about Bertrand, and C.A. responded that she did not. Defense counsel then offered, and the trial court admitted, a video clip from C.A.'s forensic interview. In the clip, C.A. recalled discussing Bertrand with S.T. because Bertrand "trash-talks my dad and [stepmother] a lot for no reason . . . and tells lies about them." VRP (Dec. 9, 2021) at 359-60. In the clip, C.A. also stated that her stepmother "was talking to us about what [Bertrand] said, I think." VRP (Dec. 9, 2021) at 359, 360. After being shown the video clip, C.A. stated that she did not recall her stepmother being in the room when Bertrand was discussed, but C.A. testified that she knew Bertrand "did trash-talk [her] dad and [stepmom] a lot." VRP (Dec. 9, 2021) at 360.

Defense counsel also questioned C.A. about when Bertrand last touched her, highlighting that during her forensic interview, C.A. said the last touching occurred in December 2020, whereas she testified at trial that the last touching occurred in January 2021. Finally, C.A. testified that after she disclosed to S.T. and G.B., she and G.B. got into a fight and did not speak for a couple months.

3

2.      S.T.'s Testimony

S.T. testified that she knew Bertrand because he dated S.T.'s mother between December 2019 and August 2020.  S.T. was also friends with C.A. and Bertrand's daughter, G.B.

S.T. also testified that sometimes she would watch movies with Bertrand while her mother was asleep.  Bertrand "would touch [her] . . . and try to, like, cuddle with [her]. . . . [H]e would . . . get close to [her] and, like, rub [her] back and, like, start touching [her] . . . chest area."  VRP (Dec. 9, 2021) at 389.  Bertrand would also sometimes touch S.T.'s "lower back" and "the front of [S.T.'s] chest."  VRP (Dec. 9, 2021) at 390.

S.T. could not recall when the touching began, but she testified that it continued "through summer of 2020."  VRP (Dec. 9, 2021) at 390.  S.T. estimated that Bertrand touched her "20 to 30 times."  VRP (Dec. 9, 2021) at 390.  S.T. initially thought the touching was accidental, but she realized it was not when Bertrand began touching her "more on [her] chest instead of, like, on [her] back."  VRP (Dec. 9, 2021) at 391.

S.T. disclosed Bertrand's touching to C.A. and G.B. when the three were together at C.A.'s house.

During cross-examination, S.T. acknowledged telling a forensic interviewer that Bertrand touched her "'around 10 times'" and that she estimated he touched her "'10 times'" during a defense interview.  VRP (Dec. 9, 2021) at 400, 401.  These estimates were in contrast to S.T.'s trial testimony that Bertrand touched her 20-30 times.  S.T. also acknowledged telling a forensic interviewer that she did not initially disclose the abuse because Bertrand "'has such a big reputation and he works at the bank and he has a really nice job, and everyone knows him, and we just didn't think anybody would believe us.'"  VRP (Dec. 9, 2021) at 403.

4

3.     G.B.'s Testimony

G.B., Bertrand's daughter, testified that she was friends with both C.A. and S.T.  When asked whether she saw her father touch C.A., G.B. testified that she saw Bertrand "hugging or high-fiving" C.A.  VRP (Dec. 10, 2021) at 425.  When asked whether she saw Bertrand touch C.A. inappropriately, G.B. recalled observing Bertrand "holding [C.A.] against her will, and she was trying to get out of his arms, and he was trying to basically tackle her . . . in [a] supposedly playful manner."  VRP (Dec. 10, 2021) at 425.

G.B. could not recall seeing her father touch S.T. inappropriately.  However, G.B. recalled an incident that occurred when she, S.T., and her father were watching a movie together.  S.T. "was sitting in the middle of the couch" between G.B. and Bertrand; S.T. was "trying to move away from [Bertrand] and . . . in between [G.B.] and the other side of the couch."  VRP (Dec. 10, 2021) at 428.  Later, S.T. told G.B. "that she wanted to get further away from [Bertrand]."  VRP (Dec. 10, 2021) at 428.

G.B. recalled C.A.'s and S.T.'s disclosures.  During a sleepover in 2021, C.A. and S.T. "mentioned [something] about [her] father."  VRP (Dec. 10, 2021) at 430.  The State asked G.B. how she reacted to C.A.'s and S.T.'s statements, and G.B. responded, "Uh, my reaction was pretty shocked, uhm, little sickened, and mostly just, like, kind of, at the time disbelief."  VRP (Dec. 10, 2021) at 430.

B.     BERTRAND'S EVIDENCE

Bertrand called C.A.'s father and stepmother to testify.  C.A.'s stepmother testified that Bertrand said "something about uh, us being poor white trash or something like that. . . .  I think, that I was a little peeved that that was said."  2 VRP (Dec. 10, 2021) at 516.  C.A.'s father also

recalled Bertrand's comments, testifying, "[C.A.] and her friend told me that [Bertrand] had, in front of a room full of people, been telling people that I was poor, white trash." 2 VRP (Dec. 10, 2021) at 521. These comments angered C.A.'s father, so he contacted Bertrand's employer to report Bertrand's comments. However, Bertrand's employer said there was nothing they could do about it.

Bertrand also called his supervisor to testify. Bertrand's supervisor, Ryan Drake, testified that he received a call from C.A.'s father on March 10, 2021. C.A.'s father wanted Drake to know what Bertrand was saying about him. However, because C.A.'s father was not a member of the credit union where Bertrand worked, Drake was unable to discipline Bertrand for the comment.

Bertrand did not testify.

C.     CLOSING ARGUMENTS AND VERDICT

1.     State's Closing Arguments

During closing arguments, the State reminded the jury twice that what the attorneys say was not evidence; "[t]he evidence you are to consider comes from the witness stand." 2 VRP (Dec. 14, 2021) at 572. The State argued that the jury should convict based on C.A.'s and S.T.'s testimonies. As for corroboration, the State argued that G.B. corroborated the victims' accounts:

> What was the response of [G.B.] when [C.A. and S.T. disclosed]? As I previously just stated, she said she was sickened; she was disgusted. Her own father. And I submit to you, why was she sickened and disgusted? Because once her two friends disclosed what her father had done to them, her mind started spinning. Her memories came back of those times her father would hold [C.A.] against her will, tickle her inappropriately, hold her back. . . . That's why she was sickened and disgusted.

2 VRP (Dec. 14, 2021) at 580-81.

2.      Bertrand's Closing Arguments

Bertrand began his closing arguments by arguing that there was "a serious lack of evidence in this case." 2 VRP (Dec. 14, 2021) at 587. For example, Bertrand argued that the State had failed to prove Bertrand touched either victim for his own sexual gratification. And Bertrand noted that G.B. never witnessed her father molest either victim.

Bertrand also highlighted inconsistencies in the victims' accounts. For example, Bertrand argued that C.A. could not recall the last time Bertrand molested her. Bertrand pointed out that S.T.'s estimation of the number of times Bertrand touched her increased between her pretrial interviews and her trial testimony. Bertrand also stressed the discrepancies in when the allegations were reported to the police, suggesting that an allegedly delayed reporting undermined their veracity.

Bertrand used closing arguments to suggest that S.T., C.A., and C.A.'s father and stepmother fabricated the allegations against Bertrand in retribution for his demeaning comments about their financial circumstances and parenting style. For example, Bertrand argued that S.T., C.A., and C.A.'s father and stepmother were all aware that Bertrand had disparaged C.A.'s parents and their financial situation. Furthermore, Bertrand was perceived to look down on C.A.'s stepmother's parenting style because C.A.'s stepmother had allowed boys to participate in prior sleepovers. Bertrand also highlighted that despite her denial on the stand, forensic interview footage demonstrated that Bertrand's disparaging comments were discussed in C.A.'s presence.

Bertrand argued that C.A.'s father's testimony demonstrated his "bias, animosity, and hostility" toward Bertrand. 2 VRP (Dec. 14, 2021) at 599. For example, Bertrand highlighted that despite calling Bertrand's employer *after* the allegations against Bertrand came to light, C.A.'s

father did not mention the allegations and only complained about Bertrand's disparaging comments. Bertrand also argued that testimony from Bertrand's employer revealed that C.A.'s father was not a member of the credit union Bertrand worked for, contrary to C.A.'s father's testimony.

Finally, to support his argument that C.A. and S.T. fabricated the allegations against him, Bertrand argued that C.A.'s explanation that she did not disclose because of Bertrand's reputation "sound[ed] like something an adult says to a child . . . and a piece of that sticks with the child." 2 VRP (Dec. 14, 2021) at 594. Bertrand also argued that S.T.'s use of a plural pronoun in explaining why she did not disclose sooner—"'we just didn't think anybody would believe us'"—suggested that S.T. and C.A. colluded to fabricate their allegations against Bertrand. 2 VRP (Dec. 14, 2021) at 596.

3.      State's Rebuttal Arguments

During its rebuttal argument, the State reminded the jury that what the attorneys say "is not evidence." 2 VRP (Dec. 14, 2021) at 605. The State then responded to Bertrand's argument that there was no evidence of sexual gratification. First, the State directed the jury to the jury instruction defining direct and circumstantial evidence. The State then argued that "based upon commonsense and experience," the jury "could reasonably infer that the rubbing of the shoulder and the back that extends to the breasts and the buttocks, that's done for sexual gratification." 2 VRP (Dec. 14, 2021) at 606-07.

The jury found Bertrand guilty as charged.

D.  MOTION FOR A NEW TRIAL

    1.  Bases for New Trial

After trial concluded, Bertrand's trial counsel withdrew and a new attorney filed a notice of substitution of defense counsel. Bertrand's newly retained counsel subsequently filed a CrR 7.5 motion for new trial. In the motion, Bertrand argued that he was entitled to a new trial under CrR 7.5(a)(8) because he received ineffective assistance of counsel at trial such that "'substantial justice has not been done.'" [2] Clerk's Papers (CP) at 125 (quoting CrR 7.5(a)(8)).

Bertrand identified five instances of allegedly deficient performance by his trial counsel:

> First, . . . in the absence of a request for [severance or] a limiting instruction, the jury was free to consider evidence of the allegations of each count as proof of propensity to commit what was alleged in the other count.
> Second, . . . the jury was not given the option of considering the lesser included offense of assault in the fourth degree.
> Additionally, trial counsel rendered deficient performance when he: a) failed to present exculpatory evidence on Mr. Bertrand's behalf, b) failed to object and allowed the State to impermissibly bolster the complainants' credibility with inadmissible hearsay, and c) failed to enforce a pretrial motion that would have kept the State from presenting to the jury damning opinion evidence.

CP at 126.

As to the first ground, Bertrand argued that because trial counsel did not move to sever the counts for separate trials, or otherwise request a limiting instruction directing the jury to only consider the victims' testimony in the context of the count to which it pertained, the jury was able to cumulate the evidence pertaining to C.A. and S.T. to find Bertrand guilty.

---

[2] "The court on motion of a defendant may grant a new trial for any one of the following causes when it affirmatively appears that a substantial right of the defendant was materially affected: . . . That substantial justice has not been done." CrR 7.5(a)(8). Ineffective assistance of counsel can constitute such a substantial injustice. *State v. Dawkins*, 71 Wn. App. 902, 906-07, 863 P.2d 124 (1993).

As to the second ground, Bertrand argued that because both victims testified to nonsexual and sexual contact with Bertrand, defense counsel should have requested a jury instruction on the lesser included offense of fourth degree assault.

As to the third ground, Bertrand argued that trial counsel failed to discover and present "exculpatory evidence [that] rebuts the State's implied assertion that Mr. Bertrand had some sort of a 'common scheme or plan' or a 'lustful disposition' to commit acts of child molestation against pre-pubescent girls." CP at 134. To support his argument, Bertrand provided the trial court with affidavits from two of Bertrand's nieces and two of G.B.'s "peer[s]." CP at 135. Both of Bertrand's nieces stated that "their uncle has never done or said anything that they would consider inappropriate and that he has never touched or tried to touch them in a way that they would consider offensive or harmful." CP at 134. The other two affiants stated that "Mr. Bertrand has never said or done anything inappropriate toward [them]." CP at 134-45.

As to the fourth ground, Bertrand argued that trial counsel should have objected during C.A. and S.T.'s testimony when the State asked them about statements they made during their forensic interviews. Bertrand argued that the State's questions elicited inadmissible hearsay from the victims that impermissibly bolstered their credibility.

As to the fifth ground, Bertrand argued that trial counsel performed deficiently by failing to object when "the prosecutor elicited . . . G.B.'s emotional response to hearing from . . . S.T. and C.A. that Mr. Bertrand had been inappropriate with them." CP at 136.

To further support his motion, Bertrand included an affidavit from his trial counsel in which trial counsel stated that his representation of Bertrand was deficient in several ways. In the affidavit, Bertrand's trial counsel explained that his "overall trial strategy was to weaken" the

victims' claims by highlighting (1) the fact that they were uncorroborated, (2) the victims' alleged motive to fabricate the allegations, (3) the delay between the acts of abuse and the victims' initial disclosure, and (4) the victims' testimony "about plainly *non-sexual* contact." CP at 153 (emphasis in original). Trial counsel then stated that "[s]ince the trial, [he has] had the opportunity to reflect on points in the case where" he performed deficiently. CP at 153. Bertrand's trial counsel's affidavit contains several similar hindsight phrases and statements: "However, looking back on the trial. . . ," "Looking back on how the trial unfolded, I realize. . . ," "I realize that if I had. . . ," "I can easily see how the jurors would have. . . ," "Additionally, if I had thought through. . . ," "Looking back on the trial I realize. . . ," "Looking back on this, I should have. . . ," "In retrospect, I should have. . . ," "If I had realized. . . ," "I can easily picture deliberations in the case turning out differently than they did if. . . ." CP at 153, 154, 155, 156.

Bertrand's trial counsel concluded that his alleged deficiencies were not a matter of trial strategy or tactics. For example, trial counsel stated that "it was the wrong call not to bring a motion to sever and not to move to narrow the scope of cross-admissibility of the two distinct counts," and "My failure to do so was not a strategic decision, this was an oversight." CP at 153, 154. Trial counsel also stated that the failure to call exculpatory witnesses was not strategic; rather, it was "an oversight." CP at 154. Similarly, trial counsel stated that his failure to object when C.A. and S.T. made hearsay statements "was not a strategic decision." CP at 155. And trial counsel's "decision not to object" to G.B.'s improper opinion testimony and the prosecutor's use of said testimony during closing argument "was not strategic." CP at 155. Finally, trial counsel stated that his failure to "ask for lesser included instructions . . . was not a strategic choice on my part." CP at 156.

11

2.      Trial Court Denies Bertrand's Motion

The trial court denied Bertrand's motion.  In its oral ruling, the trial court acknowledged Bertrand's "concern that the jury may have felt capable of improperly considering evidence from separate areas of focus for purposes other than their intended purpose" and may have "concluded that the Defendant has certain propensities, then acted in conformance with such propensities when . . . he committed the two crimes." 2 VRP (Mar. 2, 2022) at 720.  However, the trial court explained that trial counsel's failure to request a limiting instruction was not deficient performance because Bertrand was not entitled to such an instruction:

> [A]ny such [request] would have been denied because evidence related to each of the [counts] would have been admitted for purposes other than to prove the character of the Defendant in order to show action [in] conformity therewith, which is the language from [ER 404(b)].  Based upon this analysis, the Court does not agree with the characterization that the identified evidence is . . . 404(b) evidence.

2 VRP (Mar. 2, 2022) at 720.

With regard to concern about how the jury may have viewed the evidence, the trial court ruled that even if Bertrand was entitled to a limiting instruction, trial counsel's failure to request one was strategic because such an instruction would "fl[y] in the face of the first prong of the Defendant's trial strategy in this matter." 2 VRP (Mar. 2, 2022) at 721.  The trial court explained that per trial counsel's affidavit, Bertrand's trial strategy was to highlight "the various weaknesses in all of the State's evidence and to show that the [victims'] claims . . . were unreliable as a whole." 2 VRP (Mar. 2, 2022) at 721.  This strategy required "a global consideration of the two charges" because Bertrand's theory that the allegations were fabricated in retaliation for his demeaning comments depended on "both victims . . . be[ing] before the jury with very similar stories" so the jury could compare the stories' similarities and dissimilarities.  2 VRP (Mar. 2, 2022) at 721.  "In

short, Defendant's theory simply would not have worked without participation of both victims making very similar allegations. Requesting a limiting instruction would have worked against this strategy and would have been contrary to [trial counsel's] closing argument." 2 VRP (Mar. 2, 2021) at 721-22. Thus, the trial court concluded that Bertrand's first ineffective assistance claim failed.

Next, the trial court ruled that trial counsel's failure to request a lesser included offense jury instruction was deficient performance but that Betrand failed to show prejudice. According to the trial court, "[t]he availability of a compromised verdict would not have changed the outcome of the trial." 2 VRP (Mar. 2, 2022) at 724 (citing *State v. Grier*, 171 Wn.2d 17, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014)). Because Bertrand failed to show prejudice, his second ineffective assistance claim failed.

As for trial counsel's failure to discover exculpatory evidence, the trial court ruled that such a failure did not prejudice Bertrand "because one can only speculate about what the impact of the witnesses' testimony would have been on the outcome of the trial." 2 VRP (Mar. 2, 2022) at 725. Even if the trial court assumed that Bertrand "could establish a foundation that one or several of the witnesses could be called to testify to [Bertrand's] reputation," it was not clear whether Bertrand would have been better off because any such testimony would have opened the door to rebuttal evidence from the State. 2 VRP (Mar. 2, 2022) at 725. Thus, Bertrand's third ineffective assistance claim failed.

The trial court also ruled that trial counsel's failure to object to the victims' hearsay statements did not amount to ineffective assistance. The trial court explained that the victims' hearsay statements actually benefited Bertrand because it "set the stage for cross-examination" and

"amplified the inconsistencies between [the victims'] trial testimony and their statements to [the forensic interviewer]." 2 VRP (Mar. 2, 2022) at 727. Accordingly, the trial court concluded that Bertrand's fourth ineffective assistance claim failed.

Finally, the trial court explained that the State did not intentionally "solicit an emotional response from" G.B., but that G.B.'s response was a comment on the evidence. 2 VRP (Mar. 2, 2022) at 728. "However, taken in context, the comment on the evidence" was "fairly neutral" and did not prejudice Bertrand. 2 VRP (Mar. 2, 2022) at 728. Also, despite determining that the State's use of G.B.'s testimony in closing argument was "exaggerated" and "out of context," the trial court concluded that trial counsel's failure to object did not prejudice Bertrand because the jury was instructed that the attorneys' statements were not evidence and the prosecutor emphasized this instruction during closing argument. 2 VRP (Mar. 2, 2022) at 729. Thus, the trial court concluded that Bertrand's fifth ineffective assistance claim failed.

Because Bertrand failed to show that any of trial counsel's alleged deficiencies amounted to ineffective assistance, the trial court denied the motion for a new trial.

E.    SENTENCING

Bertrand was sentenced on April 6. The State recommended that Bertrand be sentenced to the high end of the standard sentencing range—89 months—as the minimum sentence for both counts. Defense counsel recommended the low end of the standard sentencing range—67 months—as the minimum sentence for both counts. The trial court sentenced Bertrand to an indeterminate sentence of 83 months to life on both counts to be served concurrently.

F.    ADDITIONAL PROCEDURAL HISTORY

On May 9, Bertrand appealed the trial court's denial of his motion for a new trial to our state Supreme Court. Our Supreme Court accepted review "to clarify the analysis that applies where a defendant asserts ineffective assistance of counsel based on counsel's failure to propose a lesser included offense instruction." *State v. Bertrand*, 3 Wn.3d 116, 122, 546 P.3d 1020 (2024).

After clarifying the analysis applicable to an ineffective assistance of counsel claim based on counsel's failure to propose a lesser included instruction, our Supreme Court addressed whether Bertrand's trial counsel was ineffective for failing to request a lesser included offense instruction on fourth degree assault. *Id.* at 141-42. Our Supreme Court concluded that Bertrand's claim failed because "even if [trial] counsel had requested the lesser included instructions, the instructions would have been properly denied because there were no facts to support instructions on fourth degree assault." *Id.* at 124. As such, our Supreme Court affirmed the trial court "in result on this issue," and the remaining issues were remanded to this court "for further proceedings, without prejudice to either party." *Id.*

ANALYSIS

Bertrand argues that the trial court should have granted his motion for a new trial because trial counsel rendered ineffective assistance when he failed to (1) request a limiting instruction based on WPIC 5.30, (2) present allegedly exculpatory evidence, and (3) object to the prosecutor's improper statements during closing arguments.[3] We address each claim in turn.

---

[3] In his opening brief, Bertrand also argues that evidence outside the record on appeal "cast[s] serious doubt as to [C.A.'s stepmother's] credibility and reveal[s] other issues." Br. of Appellant at 19. Bertrand admits, however, that "[t]hese facts set the stage for the PRP but are not essential to the adjudication of the direct appeal issues." Br. of Appellant at 20.

A.     LEGAL PRINCIPLES

The trial court may grant a motion for a new trial "when it affirmatively appears . . . [t]hat substantial justice has not been done."  CrR 7.5(a)(8).  Ineffective assistance of counsel can constitute such a substantial injustice.  *State v. Dawkins*, 71 Wn. App. 902, 906-07, 863 P.2d 124 (1993).

We review the trial court's denial of a motion for a new trial for an abuse of discretion. *State v. Meza*, 22 Wn. App. 2d 514, 529, 512 P.3d 608, *review denied*, 200 Wn.2d 1021 (2022); *Dawkins*, 71 Wn. App 906.  The trial court abuses its discretion when its decision is "manifestly unreasonable or 'rests on facts unsupported in the record or was reached by applying the wrong legal standard.'"  *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010) (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

Both the federal constitution and our state constitution guarantee criminal defendants the right to effective assistance of counsel.  *Bertrand*, 3 Wn.3d at 128.  To prevail on an ineffective assistance of counsel claim, a defendant must show deficient performance and prejudice.  *Id.*.  An ineffective assistance of counsel claim fails if either prong is not shown.  *Id.*

Defense counsel performs deficiently when their performance falls "'below an objective standard of reasonableness.'"  *Id.* (quoting *State v. McFarland*, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995)).  However, we will not find deficient performance where defense counsel's performance is a matter of "'legitimate trial strategy or tactic[].'"  *Id.* (alteration in original) (quoting *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009)).  We begin our analysis with "'a strong presumption that [defense] counsel's performance was reasonable.'"  *Id.* (alteration in original) (quoting *Kyllo*, 166 Wn.2d at 862).  As the United States Supreme Court has explained,

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To show prejudice, the defendant must demonstrate "'a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Bertrand*, 3 Wn.3d at 129 (quoting *Kyllo*, 166 Wn.2d at 862). While the "'reasonable probability'" standard is "'lower than a preponderance standard,'" the defendant must still "'affirmatively prove prejudice' by showing more than a 'conceivable effect on the outcome.'" *Id.* (internal quotation marks omitted) (quoting *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017)). "Prejudice exists when there is 'a probability sufficient to undermine [the court's] confidence in the outcome.'" *Id.* (alteration in original) (quoting *Strickland*, 466 U.S. at 694).

B.      FAILURE TO REQUEST LIMITING INSTRUCTION

Bertrand argues that he received ineffective assistance of counsel when defense counsel "failed to limit cross-admissibility of Count I and Count II evidence to a non-propensity purpose" by requesting a limiting instruction.[4] Br. of Appellant at 29. Specifically, Bertrand contends that he was entitled to a limiting instruction based on WPIC 5.30. We disagree.

_____

[4] In his assignments of error, Bertrand asserts that his "constitutionally guaranteed right to a fair trial under U.S. Const. amend. XIV and Wash. Const. art. I, § 3 was violated when the jury was permitted to consider allegations of Count I as proof of a perverse propensity to commit the allegations of Count II, and vice versa." Br. of Appellant at 3. Later, Bertrand also asks whether he was "deprived of a fair trial because the jury had permission to consider evidence relating to one count as proof of propensity to commit the other?" Br. of Appellant at 7. However, Bertrand only argues that without a proper limiting instruction, the jury was free to cumulate evidence against Bertrand, "which is why Bertrand's trial lacked fundamental due process." Br. of

### 1.	Bertrand Not Entitled to Limiting Instruction

"Where the claim of ineffective assistance is based upon counsel's failure to request a particular jury instruction, the defendant must show he was entitled to the instruction, counsel's performance was deficient in failing to request it, and the failure to request the instruction caused prejudice." *State v. Thompson*, 169 Wn. App. 436, 495, 290 P.3d 996 (2012), *review denied*, 176 Wn.2d 1023 (2013).

Here, Bertrand argues that because "C.A.'s accusations were not related to S.T.'s accusations," ER 404(b) should have "'categorical[ly] bar[red] . . . introduction of evidence of prior misconduct for the purpose of showing the defendant's character and action in conformity with that character.'" Br. of Appellant at 32 (quoting *State v. Gresham*, 173 Wn.2d 405, 429, 269 P.3d 207 (2012)). In other words, Bertrand asserts that trial counsel should have requested a limiting instruction based on WPIC 5.30 because without one, "the jury was free to conclude that C.A. was telling the truth . . . because Bertrand was being accused of the same type of offense by . . . S.T." and vice versa. Br. of Appellant at 44.

WPIC 5.30, which is titled "Evidence Limited as to Purpose," reads:

> Certain evidence has been admitted in this case for only a limited purpose. This evidence [consists of _____ and] may be considered by you only for the purpose of _____.You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

---

Appellant at 45. Thus, it appears that Bertrand's argument regarding his right to a fair trial is premised on trial counsel's alleged ineffective assistance as evidence by his failure to request a limiting instruction, not on a lack of due process. Therefore, we do not separately address or analyze whether Bertrand's right to a fair trial was violated.

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 5.30, at 197 (5th ed. 2021) (WPIC) (brackets and underscores in original). As the note on use explains, WPIC 5.30 "is a generic instruction to be used when evidence is admissible *only for a limited purpose*." WPIC 5.30 note on use at 197 (emphasis added).

In *Gresham*, our Supreme Court explained how to use limiting instructions in the context of ER 404(b). 173 Wn.2d at 420-24. Our Supreme Court began by quoting ER 404(b), which prohibits "'[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith.'" *Id.* at 420. However, "[t]he same evidence *may* . . . be admissible for" another limited, "proper purpose." *Id.* (emphasis in original). Such limited, proper purposes include "'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *Id.* (quoting ER 404(b)).

When the trial court admits evidence of other crimes, wrongs, or acts against the defendant "for a proper purpose," the defendant "is entitled, upon request, to a limiting instruction informing the jury that the evidence is to be used only for the proper purpose and not for the purpose of proving the character of a person in order to show that the person acted in conformity with that character." *Id*. In *Gresham*, the defendant challenged the admission of his prior sex offenses, but our Supreme Court affirmed the trial court because, under ER 404(b), "evidence of [the defendant's] prior sex offenses was admissible for the proper purpose of showing a common scheme or plan." *Id.* at 419. However, our Supreme Court also concluded that the trial court erred in failing to give a limiting instruction concerning the ER 404(b) evidence. *Id.* at 423.

Here, both parties moved in limine to exclude prior bad act evidence to show action in conformity therewith, and the trial court granted the motions. Contrary to Bertrand's assertion,

the State did not offer S.T.'s or C.A.'s testimony, or any other evidence, to show action in conformity therewith. Nor did the State offer any evidence for a proper ER 404(b) purpose. As the State argued in their response to Bertrand's motion for a new trial, ER 404(b) was inapplicable because the evidence at issue was presented to prove the charges Bertrand faced. *See* CP at 187-88 (The State argues that ER "404(b) is inapplicable" because "there was no 'other' [act] evidence admitted."). Neither party offered any ER 404(b) evidence for a proper purpose such as evidence of a common scheme or plan.

Bertrand's claim fails because he was not entitled to a limiting instruction based on WPIC 5.30. *See Thompson*, 169 Wn. App. at 495 ("Where the claim of ineffective assistance is based upon counsel's failure to request a particular jury instruction, the defendant must [first] show he was entitled to the instruction."). Bertrand was not entitled to a limiting instruction based on WPIC 5.30 because C.A.'s and S.T.'s testimonies were not admitted for a limited purpose; rather, the evidence was admitted as direct evidence of the charges at issue. C.A.'s and S.T.'s testimonies were admitted to support "the offenses charged" and were not "evidence of unrelated conduct" whose admission would be precluded by ER 404(b). *State v. Sutherby*, 165 Wn.2d 870, 887, 204 P.3d 916 (2009). And as the note on use to WPIC 5.30 and *Gresham* make clear, a defendant is only entitled to a limiting instruction "in the context of ER 404(b)" when the evidence has been admitted "only for a limited purpose." 173 Wn.2d at 424; WPIC 5.30 note on use, at 197. Because C.A.'s and S.T.'s testimonies were admitted to prove the charges against Bertrand and were not admitted for any ER 404(b) purpose, no limiting instruction was required.

Bertrand cites to numerous cases to support his argument; however, the cases relied on by Bertrand are either inapplicable or fail to support his contention that trial counsel provided

ineffective assistance by not requesting a limiting instruction. *See State v. Arredondo*, 188 Wn.2d 244, 259, 265, 394 P.3d 348 (2017) (challenging trial court's admission of evidence); *State v. Mohamed*, 186 Wn.2d 235, 237, 375 P.3d 1068 (2016) (whether prior convictions can be used to impeach a hearsay declarant under certain circumstances); *State v. Myers*, 133 Wn.2d 26, 36, 941 P.2d 1102 (1997) (challenge to trial court's admission of evidence); *State v. Kalakosky*, 121 Wn.2d 525, 529, 852 P.2d 1064 (1993) (challenging trial court's denial of a motion to sever); *State v. Brown*, 113 Wn.2d 520, 528, 554, 782 P.2d 1013 (1989) (plurality opinion), *amended on recons.*, 787 P.2d 906 (1990) (challenge to trial court's admission of evidence); *State v. Bradford*, 60 Wn. App. 857, 861, 808 P.2d 174, *review denied*, 117 Wn.2d 1003 (1991) (challenge to trial court's response to a jury inquiry alleged to be contrary to the instruction given); *State v. Harris*, 36 Wn. App. 746, 750, 677 P.2d 202 (1984) (challenging trial court's denial of a motion to sever). Therefore, Bertrand's ineffective assistance of counsel claim based on the failure to request a limiting instruction fails.

2.    Trial Strategy

Even if we assume defense counsel's failure to request an instruction to limit the jury's consideration of C.A.'s and S.T.'s testimony to the elements of each count specific to the individual victim was deficient, Bertrand's ineffective assistance of counsel claim still fails because such a limiting instruction would have been incompatible with Bertrand's trial strategy.

a.      Trial counsel's affidavit is not determinative

In an affidavit attached to his motion for a new trial, Bertrand's trial counsel stated that, in retrospect, "it was the wrong call not to bring a motion to sever[5] and not to move to narrow the scope of cross-admissibility of the two distinct counts" by requesting a limiting instruction. CP at 153. Bertrand argues that trial counsel's affidavit is determinative of the deficient performance question. *See* Br. of Appellant at 3, 4 ("In finding that trial counsel's failure to limit cross-admissibility to a non-propensity purpose was reasonable strategy, the trial court erred" because trial counsel submitted a "sworn statement that this failing was not strategic."). We disagree.

As we stated above, assessing trial counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective *at the time*." *Strickland*, 466 U.S. at 689 (emphasis added). Relying on trial counsel's post-verdict affidavit without conducting our own analysis would run counter to this rule.

b.      Incompatibility of limiting instruction with Bertrand's trial strategy

In light of the entire record, it appears that trial counsel's failure to request a limiting instruction was a legitimate strategic decision based on Bertrand's theory of the case. As Bertrand's trial counsel stated in his affidavit and as shown in the record, the trial strategy was to highlight the "weaknesses in the State's evidence" and paint "C.A. and S.T. as unreliable on the whole." CP at 153. To that end, Bertrand's trial counsel stressed that the victims' allegations

---

[5] On appeal, Bertrand states that he is not "asserting that trial counsel rendered ineffective assistance by" failing to move to sever the two counts for separate trials. Br. of Appellant at 39. Thus, we do not address whether trial counsel performed deficiently by failing to move to sever the two charges for separate trials.

"were uncorroborated" and highlighted the "inconsistencies in how C.A. and S.T. described what supposedly occurred." CP at 153. Finally, trial counsel argued that a conflict between one victim's parents and Bertrand, and another between Bertrand's daughter and both victims, evidenced the victims' bias and "motive to fabricate" the allegations against Bertrand. CP at 153.

As the trial court noted, a limiting instruction based on WPIC 5.30 would have severely limited "the Defendant's trial strategy" because Bertrand's strategy "required both victims to be before the jury with very similar stories" so that the jury could "compare the [victims'] stories and" their similarities or dissimilarities. 2 VRP (Mar. 2, 2022) at 721. "In short, Defendant's theory simply would not have worked without participation of both victims making very similar allegations. Requesting a limiting instruction would have worked against this strategy and would have been contrary to [trial counsel's] closing argument." 2 VRP (Mar. 2, 2022) at 721-22. We agree.

Here, the record shows that presenting C.A.'s and S.T.'s testimony without a limiting instruction was a legitimate trial strategy and necessary to present Bertrand's theory of the case. Thus, defense counsel did not perform deficiently.

2.       Prejudice Not Shown

Even assuming trial counsel's failure to request a limiting instruction was deficient, Bertrand's claim still fails because he does not demonstrate prejudice. Bertrand argues that the lack of limiting instruction prejudiced him because without one, "the jury [was given] permission to cumulate evidence and to conclude that [Bertrand] had the propensity to offend against children." Br. of Appellant at 40.

As noted above, C.A.'s and S.T.'s testimonies were not admitted to show conduct in conformity with Bertrand's allegedly criminal character, nor were their testimonies admitted for a limited but proper purpose under ER 404(b). Thus, it is unclear how the jury could have been given "permission to cumulate evidence and . . . conclude that [Bertrand] had the propensity to offend against children." Br. of Appellant at 40.

Moreover, the jury was instructed that "[a] separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." CP at 74. The jury was also given two separate to-convict instructions, further suggesting that the two counts should be decided separately on the evidence pertaining to each count. Thus, even in the absence of a limiting instruction, the jury was instructed—explicitly and implicitly—to decide the two counts separately, ameliorating the potential prejudice from the joined counts. Finally, as explained above, the lack of a limiting instruction benefited Bertrand by allowing him to fully present his theory of the case.

Bertrand also argues he was prejudiced by the State's argument "[i]n opening and in closing . . . that what S.T. said happened to her was 'similar to' or 'very similar' to what C.A. said happened to her." Br. of Appellant at 45. But again, this argument benefitted Bertrand, as the victims' similar stories supported Bertrand's theory that they fabricated the allegations against him.

Bertrand further argues that he was prejudiced by the State's failure to reference the separate counts instruction during closing arguments. However, the State was not required to reference any particular instruction during closing arguments, and the trial court instructed the jury immediately before closing arguments that each count was to be decided separately.

Bertrand also takes issue with the State's reference to "the circumstantial evidence instruction," but merely argues that this reference "was allowed, but . . . unfair." Br. of Appellant at 46. We are not persuaded by such a conclusory argument. Thus, even if we were to assume trial counsel performed deficiently, Bertrand's ineffective assistance claim would still fail because Bertrand fails to show prejudice.

C.    FAILURE TO CALL REBUTTAL WITNESSES

Bertrand also argues that trial counsel rendered ineffective assistance of counsel by "fail[ing] to discover that Bertrand's two nieces and two teenage daughters of his friends were available to testify that they never experienced anything like what C.A. and S.T. alleged."[6] Br. of Appellant at 51. We disagree.

"Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." ER 404(a). However, "[e]vidence of a pertinent trait of character offered by an accused" is admissible. ER 404(a)(1). A "'pertinent character trait is one that tends to make the existence of any material fact more or

---

[6] In his assignments of error, Bertrand states, "To the extent the trial court found that trial counsel 'successfully argued over the State's objections to fully present a defense,' the trial court erred, and this finding is not substantially supported by the evidence." Br. of Appellant at 4 (quoting VRP (Mar. 2, 2022) at 722. And in his brief, Bertrand argues, "A defendant has the right to present a defense through relevant and admissible evidence. Character evidence is generally inadmissible under ER 404(a), but evidence of a pertinent character trait of the accused is an exception." Br. of Appellant at 52 (citation omitted). While these statements suggest an argument premised on the constitutional right to present a defense, Bertrand's briefing clarifies that his argument is an ineffective assistance of counsel claim premised on trial counsel's failure to discover and offer the rebuttal witnesses' testimony. Moreover, because the trial court never ruled on the admissibility of the four rebuttal witnesses' testimony, any claim premised on the right to present a defense would fail.

less probable.'" *State v. Perez-Valdez*, 172 Wn.2d 808, 819-20, 265 P.3d 853 (2011) (quoting *City of Kennewick v. Day*, 142 Wn.2d 1, 6, 11 P.3d 304 (2000)).

Where evidence of a defendant's character trait is admissible, the evidence must be in the form of opinion testimony. ER 405(a). Testimony regarding specific instances of the defendant's conduct is admissible only where the "character or a trait of character" is "an essential element of a charge, claim, or defense." ER 405(b). "'For character to be an essential element, character must itself determine the rights and liabilities of the parties.'" *State v. Stacy*, 181 Wn. App. 553, 566, 326 P.3d 136 (quoting *State v. Kelly*, 102 Wn.2d 188, 197, 685 P.2d 564 (1984)), *review denied*, 181 Wn.2d 1008 (2014).

Bertrand's claim fails because even if trial counsel had discovered and offered the rebuttal witnesses' testimony, the evidence was inadmissible. First, Bertrand argues that "the witnesses' affidavits . . . would have . . . rebut[ted] the State's implied claim of a common scheme or plan." Br. of Appellant at 52. However, as noted above, the State did not offer C.A.'s and S.T.'s testimony as evidence of a common scheme or plan; thus, there was no common scheme or plan to rebut, explicitly or implicitly.

Moreover, the rebuttal witnesses' affidavits demonstrate that their testimony would have been in the form of specific instances, rather than the opinion testimony required by ER 405(a). Bertrand appears to recognize as much, anticipating in his opening brief that this court might "question Bertrand's proffer . . . because the four witnesses' declarations addressed their own personal experiences" with Bertrand, "as opposed to Bertrand's reputation in the community." Br. of Appellant at 53. Thus, Bertrand asks us to "consider the full record and find that Bertrand was in the position to present reputation evidence and that his trial lawyer should have done so." Br.

of Appellant at 53. To support his argument, Bertrand cites to the letters of support submitted on his behalf at sentencing. . However, as Bertrand's brief demonstrates, his argument is premised on the rebuttal witness affidavits submitted with his motion for a new trial, *not* the letters of support submitted on his behalf at sentencing. *See* Br. of Appellant at 51 (Trial counsel was ineffective for failing "to discover that Bertrand's two nieces and two teenage daughters of his friends were available to testify that they never experienced anything like what C.A. and S.T. alleged.").

Because the rebuttal evidence at issue was not admissible, defense counsel's failure to discover and offer the evidence was not deficient performance, and Bertrand's second ineffective assistance claim fails.

D.      FAILURE TO OBJECT TO PROSECUTORIAL MISCONDUCT

Finally, Bertrand argues that he received ineffective assistance when trial counsel "failed to object to the prosecutor's argument that misstated [G.B.'s] testimony and improperly used the same to vouch for [C.A. and S.T.]." Br. of Appellant at 54.

Because Bertrand presents his prosecutorial misconduct argument as one of ineffective assistance, we analyze the issue pursuant to the usual deficient performance and prejudice standards applicable to ineffective assistance claims.[7] *See In re Pers. Restraint of Lui*, 188 Wn.2d

---

[7] In his assignments of error, Bertrand asks, "Was Bertrand's right to a fair trial prejudiced when the representative of the State wrongly asserted to the jury that Bertrand's own daughter believed her father had done something sickening?" Br. of Appellant at 8. While this assignment of error suggests a standalone prosecutorial misconduct claim, Bertrand's briefing clarifies that his argument is one of ineffective assistance premised on trial counsel's failure to object to prosecutorial misconduct. *See* Br. of Appellant at 54 ("Bertrand was denied his right to *effective assistance of counsel* as guaranteed by the Sixth Amendment when his lawyer failed to object to the prosecutor's argument that misstated [G.B.'s] testimony and improperly used the same to vouch for the accusers." (Emphasis added)).

525, 538, 540-41, 397 P.3d 90 (2017); *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 61, 296 P.3d 872 (2013). An ineffective assistance claim premised on trial counsel's failure to object requires the defendant to show that (1) "not objecting fell below prevailing professional norms," (2) that "the proposed objection would likely have been sustained," and (3) "that the result of the trial would have been different if" the objection had been sustained. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004).

Whether or not to object is a "classic example of trial tactics." *State v. Vazquez*, 198 Wn.2d 239, 248, 494 P.3d 424 (2021). The defendant bears the burden of demonstrating that had defense counsel objected, the objection would have been sustained. *Id.* "'Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.'" *Id.* (quoting *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541, *review denied*, 193 Wn.2d 1038 (2019)).

Here, Bertrand argues that the prosecutor misstated the evidence when he argued in closing that G.B. was disgusted by C.A.'s and S.T.'s disclosures, and implied that G.B.'s reaction evidenced that she believed the disclosures. The State concedes that the prosecutor's argument "mischaracterized [G.B.'s] testimony" but argues that the improper argument did not prejudice Bertrand. Br. of Resp't at 24.

We accept the State's concession because the prosecutor's argument was improper. While prosecutors "have 'wide latitude to argue reasonable inferences from the evidence,'" a prosecutor's argument "must be based on the evidence and must not misstate the applicable law." *In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 166, 410 P.3d 1142 (2018) (quoting *State v. Thorgerson*, 172

Wn.2d 438, 448, 258 P.3d 43 (2011)); *State v. Crossguns*, 199 Wn.2d 282, 296-97, 505 P.3d 529 (2022).

The prosecutor's argument was improper for two reasons. First, the prosecutor's argument that G.B. "was disgusted" by the victims' disclosures was a misstatement of the evidence because G.B. never testified that the disclosures disgusted her. *Compare* 1 VRP (Dec. 10, 2021) at 430 *with* 2 VRP (Dec. 14, 2021) at 580-81. Second, the prosecutor's argument suggested that G.B. reacted to the disclosures with shock and disbelief because she believed that her father had molested C.A. and S.T.:

> [W]hy was [G.B.] sickened and disgusted? Because once her two friends disclosed what her father had done to them, her mind started spinning. Her memories came back of those times her father would hold [C.A.] against her will, tickle her inappropriately, hold her back. Her mind recalled when she saw [C.A.] uncomfortable around the Defendant every time he touched her or came near her. Her mind was spinning when she recalled the time she was at her house shortly after Christmas when [S.T.] snuggled up to her on the couch when her own father was inching closer to her 11-year-old-friend. That's why she was sickened and disgusted.

2 VRP (Dec. 14, 2021) at 580-81. This was a misstatement of the evidence because G.B. only testified that she was "pretty shocked," a "little sickened," and in "disbelief" when C.A. and S.T. disclosed to her.[8] 1 VRP (Dec. 10, 2021) at 430. Had trial counsel objected, the objection would likely have been sustained, meaning that trial counsel's failure to object was deficient performance. *Davis*, 152 Wn.2d at 714.

---

[8] Even if G.B. had testified as the prosecutor argued, such evidence would have been inadmissible because "a witness may not give, directly or by inference, an opinion on a defendant's guilt," and the trial court precluded any such improper opinion testimony during motions in limine. *State v. Dolan*, 118 Wn. App. 323, 329, 73 P.3d 1011 (2003).

Despite trial counsel's failure to object to the prosecutor's improper arguments, Bertrand's ineffective assistance claim fails because he has not shown prejudice. To prevail, Bertrand must show a reasonable probability that but for trial counsel's failure to object, the outcome of the proceeding would have been different. *Bertrand*, 3 Wn.3d at 129. Bertrand argues that he was prejudiced because the prosecutor's misstatement of G.B.'s testimony "wrongly suggested that G.B. was corroborating (either as a witness, or as a believer) C.A. and S.T.'s claims of sexual misconduct." Br. of Appellant at 59. We disagree.

While the prosecutor's argument suggested that G.B.'s reaction to the victims' disclosures corroborated their allegations, Bertrand's trial counsel reminded the jury that G.B. never witnessed her father molest anyone. Moreover, the jury was instructed by the trial court that "'the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. . . . You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.'" 2 VRP (Dec. 14, 2021) at 564. And the prosecutor reminded the jury that what he said was not evidence at the beginning and close of the State's closing arguments. Defense counsel reiterated that if anything he said was "not consistent with your recollection, just go with your recollection." 2 VRP (Dec. 14, 2021) at 589. During rebuttal arguments, the State reminded the jury that what the prosecutor said "is not evidence." 2 VRP (Dec. 14, 2021) at 605. Later, defense counsel objected to misstated evidence and the trial court reminded the jury that "the facts are to be determined by the jurors, not by the attorneys." 2 VRP (Dec. 14, 2021) at 615. We presume jurors follow the trial court's instructions. *State v. Weaver*, 198 Wn.2d 459, 467, 496 P.3d 1183 (2021).

In light of the trial court's instruction to the jury that the lawyers' statements were not evidence and counsels' multiple reminders to the jury during closing argument that their statements are not evidence, Bertrand fails to demonstrate that but for defense counsel's failure to object, the outcome of the proceeding would have been different. Because Bertrand fails to show that trial counsel's failure to object to the prosecutor's improper arguments prejudiced him, his ineffective assistance of counsel claim fails.[9]

## CONCLUSION

Because Bertrand fails to show ineffective assistance of counsel, the trial court did not abuse its discretion in denying Bertrand's motion for a new trial. We affirm Bertrand's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, J.

Veljacic, A.C.J.

---

[9] Bertrand also argues that he is entitled to a new trial under the cumulative error doctrine. However, because Bertrand's arguments all fail, the doctrine is inapplicable, and we do not address it.